UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GAYMAR INDUSTRIES, INC.,

                        Plaintiff,

v.                                                   **DECISION AND ORDER**
                                                        08-CV-299S

CINCINNATI SUB-ZERO PRODS., INC.,

                        Defendants.

## I. INTRODUCTION

Presently before this Court is Plaintiff Gaymar Industries, Inc.'s Motion for Preliminary Injunction. Also pending is Defendant Cincinnati Sub-Zero Products, Inc.'s ("CSZ") Motion to Stay Pending *Inter Partes* Reexamination of the patent-in-suit — No. 6,517,510 ("the '510 patent") for an automatic patient control device — by the United States Patent and Trademark Office ("PTO").[1] For the reasons discussed below, Gaymar's Motion for Preliminary Injunction is denied and CSZ's Motion to Stay is granted.

## II. BACKGROUND

At issue in this case are the parties' competing temperature management products for use in heat therapy, blood and fluid warming, and core body temperature management. Gaymar produces the Medi-Therm III warming and cooling unit under the '510 patent; CSZ

---

[1] The submissions relevant to this motion are at docket numbers 21, 33-37, and 59. In addition, Plaintiff moved for leave to file a supplemental memorandum and declaration in opposition to CSZ's Motion to Stay. (Docket No. 53.) This Court will grant Plaintiff's motion and has considered the supplemental memorandum and declaration filed at docket number 54, exhibits B and C. Further, Plaintiff filed an additional motion seeking, in part, leave to file supplemental authority in opposition to Defendant's Motion to Stay. (Docket No. 89.) This Court will grant that portion of Plaintiff's motion that relates to Defendant's Motion to Stay and has considered the supplemental authority filed at docket number 89, exhibit B.

produces the Blanketrol III.

Gaymar filed its Complaint in this Court on April 18, 2008, alleging that CSZ's Blanketrol III infringes its '510 patent. (Docket No. 1.) It moved for a preliminary injunction approximately three months later, on July 15, 2008. (Docket No. 3.) CSZ moved to stay these proceedings on September 10, 2008, in light of its pending request for the PTO to conduct *inter partes* reexamination of the '510 patent. (Docket No. 21.) During the pendency of the motion, the PTO granted CSZ's request for *inter partes* reexamination and rejected all 134 claims in the '510 patent. (Docket No. 67.)

## III. DISCUSSION

**A.     Gaymar's Motion for Preliminary Injunction**

Motions for preliminary injunction In a patent infringement case require the court to examine four factors: "(1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest." Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003) (citing Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001)). A preliminary injunction in a patent case, however, "is an extraordinary remedy reserved for circumstances in which the merits of movant's case are clear, the irreparable injury is manifest, the hardships tip decidedly in the movant's favor, and the public interest is served by the injunction." Canon Inc. v. GCC Int'l Ltd., 450 F.Supp.2d 243, 246 (S.D.N.Y. 2006).

Where the parties to patent litigation file competing motions for preliminary injunction and motions to stay proceedings pending reexamination before the PTO, the Federal Circuit has cautioned district courts to not grant both motions:

> A preliminary injunction should not be granted if there is a substantial issue of patent validity. Similarly, a stay should ordinarily not be granted unless there is a substantial patentability issue raised in the inter partes reexamination proceeding. Thus, both a preliminary injunction and a stay ordinarily should not be granted at the same time. A grant of a preliminary injunction followed by a stay of the district court proceedings could subject an accused infringer to unfair and undesirable delay in reaching a final resolution.

Proctor & Gamble Co. v. Kraft Foods Global, Inc., 549 F.3d 842, 849 (Fed. Cir. 2008).

It is undisputed in this case that the PTO has granted CSZ's request for reexamination of the '510 patent. Thus, the PTO has determined that there is a substantial new question of patentability concerning the Medi-Therm III. See 35 U.S.C. § 312(a); see also In Re Freeman, 30 F.3d 1459, 1468 (Fed. Cir. 1994) ("The function of reexamination is to increase the reliability of patents thought to be of doubtful validity."). Moreover, the PTO issued a non-final action rejecting all 134 claims in the '510 patent. For these reasons, and those stated below in the discussion of CSZ's Motion to Stay, this Court finds that there is a substantial issue of patent validity, and therefore, Gaymar's Motion for Preliminary Injunction will be denied.[2] See Proctor & Gamble, 549 F.3d at 849.

---

[2] In light of the denial of Gaymar's Motion for Preliminary Injunction on this basis, its Motion to Strike or Preclude the Declaration of Richard A. Killworth (Docket No. 70) and that portion of its Motion for Permission to Present Additional Authority relative to this motion (Docket No. 89), will be denied as moot.

**B.     CSZ's Motion to Stay Proceedings**

      **1.     Authority to Stay Proceedings**

A court possesses the inherent power to control and manage its docket, which includes the authority to order a stay pending reexamination proceedings at the PTO. See Xerox Corp. v. 3Com Corp., 69 F.Supp.2d 404, 406 (W.D.N.Y. 1999) (citing Gould v. Control Laser Corp., 705 F.2d 1340 (Fed. Cir. 1983)). The statutory reexamination procedure exists to eliminate or narrow claim validity issues for trial. Snyder Seed Corp. v. Scrypton Sys, Inc., No. 98-CV-87, 1999 WL 605701, at *2 (W.D.N.Y. June 11, 1999); 35 U.S.C. § 311. Reexamination by the PTO is intended "to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts . . .," especially where the infringement litigation is in the early stages. Id. at *2.

A motion to stay proceedings pending reexamination by the PTO is committed to the sound discretion of the court. See K.G. Motors, Inc. v. Specialized Bicycle Components, Inc., No. 08-CV-6422, 2009 WL 2179129, at *2 (W.D.N.Y. July 22, 2009) (quoting Xerox, 69 F.Supp.2d at 406). Three factors are generally considered: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." K.G. Motors, 2009 WL 2179129, at *3 (citations omitted); Robbins v. H.H. Brown Shoe Co., Inc., No. 08-Civ.-6885, 2009 WL 2170174, at *1 (S.D.N.Y. June 30, 2009).

## 2. Analysis

As to the relevant factors, Gaymar argues that a stay should not be imposed because (1) it will be prejudiced by the delay attendant to the reexamination proceedings because CSZ will have the equivalent of a "royalty-free" license to the '510 patent, (2) it may lose market share in the new and emerging therapeutic cooling market to what it considers to be CSZ's infringing product, and (3) the claims in CSZ's request for reexamination are meritless.[3]

Gaymar correctly notes that it may be prejudiced by the delay attendant to the reexamination process. But the possibility of substantial delay is present in every case where a stay is sought to allow the PTO to reexamine a patent. Here, the parties have presented estimates of that delay ranging from 33 months to 8 years, and courts recognize that reexamination can be a lengthy process. See, e.g., Robbins, 2009 WL 2170174, at *1 (collecting cases). And although the PTO purports to conduct reexamination proceedings with "special dispatch," 35 U.S.C. § 314(c), the possibility of lengthy delay is undoubtedly a factor weighing against a stay. Nonetheless, this Court finds that the disadvantages of the delay is outweighed by the advantages (discussed below) that come with allowing the PTO to compete reexamination. See Bausch & Lomb Inc. v. Rexall Sundown, Inc., 554 F.Supp.2d 386, 390 (W.D.N.Y. 2008); Snyder Seed Corp., 1999 WL 605701, at *4 ("the benefits of a stay pending determination of defendant's requests for reexamination . . . outweigh any detriments to the parties caused by delay of court

---

[3] Gaymar's third argument is moot because the PTO granted CSZ's request for reexamination, which necessitates a finding that there is a substantial new question of patentability. See 35 U.S.C. § 312(a). Moreover, the PTO, in a non-final action, rejected all 134 claims of the '510 patent. (Docket No. 67-3.)

5

proceedings").

CSZ's marketplace-based claims of prejudice are less persuasive because there is a substantial issue of patent validity. In granting CSZ's reexamination request, the PTO has issued a non-final action rejecting all 134 claims in the '510 patent. It has also determined that there is a substantial new question of patentability concerning the Medi-Therm III. See 35 U.S.C. § 312(a). Thus, Gaymar's claims of prejudice are reduced because it possesses the right to exclude others *only* if its patent is valid, and the PTO's action thus far calls that into question. Cf. In Re Freeman, 30 F.3d 1459, 1468 (Fed. Cir. 1994) ("The function of reexamination is to increase the reliability of patents thought to be of doubtful validity."). Moreover, should Gaymar prevail at the PTO and the '510 patent be determined valid, Gaymar may, if otherwise able, recover lost profits and money damages from CSZ. In addition, Gaymar's claims of lost market share are speculative and unknown at this point, particularly considering that the target market appears emerging and not well defined. Further, this Court finds no support for Gaymar's argument that CSZ is seeking a stay for dilatory reasons or to gain an unfair tactical advantage. In any event, even assuming a real risk of lost market share, this Court finds that the advantages of a stay outweigh that risk.

A stay of this action has significant potential to simplify the issues in this case. There is only one patent at issue and a single claim of infringement. The PTO's examination of the claims will only serve to assist this Court should proceedings continue. See, e.g., K.G. Motors, Inc., 2009 WL 2179129, at *4 (noting that "[s]hould the PTO determine that all or some of the patent claims at issue are invalid, that determination will conserve the resources of this Court and the litigants and simplify the issues before the

Court. Conversely, should the PTO reaffirm the patent claims, the Court will benefit from its expert analysis of those claims and the prior art."); Perricone v. Unimed Nutritional Servs., Inc., 301 CV 512, 2002 WL 31075868, at *1-*2 (D.Conn. July 18, 2002) (explaining benefits of awaiting PTO reexamination results).

Finally, the only discovery conducted thus far relates to Gaymar's request for injunctive relief, leaving this case in its infant stage. No case management order has been issued. No general discovery has occurred. No Markman hearing has been scheduled. And, of course, no trial date has been set. The early posture of this case therefore weighs in favor of granting a stay. See K.G. Motors, 2009 WL 2179129, at *4.

This Court is persuaded by those cases in which proceedings are routinely stayed in the absence of substantial progress towards trial. See, e.g., Robbins, 2009 WL 2170174, at *2 (noting that litigation being in its early stages weighs in favor of granting a stay). This Court (and this case) will benefit from the many advantages that deferring to the PTO offers, including:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without further use of the court.

5. The record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

> 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court.

Id. at *2-3 (citations omitted); Perricone, 2002 WL 31075868, at *1-*2; see also Robbins, 2009 WL 2170174, at *1 ("There is a 'liberal policy in favor of granting motions to stay proceedings pending the outcome of the USPTO reexamination or reissuance proceedings.'" (citing ASCI v. STD Entm't USA, Inc., 844 F.Supp. 1378, 1381 (N.D.Cal. 1994)).

Accordingly, for the reasons stated above, CSZ's Motion to Stay is granted and these proceedings will be stayed pending reexamination of the '510 patent by the PTO.[4]

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Preliminary Injunction is denied and Defendant's Motion to Stay is granted. This matter is stayed pending a final resolution of the PTO's reexamination of the '510 patent. Counsel shall file a motion within 14 days of the PTO's reexamination decision requesting the scheduling of a status conference. This case will be placed on this Court's administrative calendar during the pendency of the stay.

---

[4] In light of the stay of these proceedings, the following pending motions will be denied with leave to reinstate, if necessary, upon lifting of the stay: (1) Plaintiff's Motion to Strike Defendant's Answer and Counterclaim (Docket No. 29), and (2) Defendant's Motion for Leave to File an Amended Answer (Docket No. 72).

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Preliminary Injunction (Docket No. 3) is DENIED.

FURTHER, that Defendant's Motion to Stay (Docket No. 21) is GRANTED.

FURTHER, that Plaintiff's Motion to Strike Defendant's Answer and Counterclaim (Docket No. 29) is DENIED as moot, subject to reinstatement upon the lifting of the stay.

FURTHER, that Plaintiff's Motion for Leave to File a Supplemental Memorandum and Declaration (Docket No. 53) is GRANTED. This Court has considered the supplemental memorandum and declaration filed at docket number 54, exhibits B and C.

FURTHER, Plaintiff's Motion to Strike and/or Preclude the Killworth Declaration and Testimony (Docket No. 70) is DENIED as moot.

FURTHER, Defendant's Motion for Leave to File an Amended Answer (Docket No. 72) is DENIED as moot, subject to reinstatement upon the lifting of the stay.

FURTHER, that Plaintiff's Motion for Leave to File Supplemental Authority (Docket No. 89) is GRANTED in part and DENIED as moot in part. The motion is granted as it relates to the submission of additional authority relative to Defendant's Motion to Stay (Docket No. 21), but denied as moot as it relates to the submission of additional authority relating to Plaintiff's Motion to Strike the Killworth Declaration (Docket No. 70).

FURTHER, that counsel shall file a motion within 14 days of the PTO's reexamination decision requesting the scheduling of a status conference.

FURTHER, that the Clerk of the Court is directed to place this case on this Court's administrative calendar.

SO ORDERED.

Dated: September 28, 2009
Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge