UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GAYMAR INDUSTRIES INC.,

                    Plaintiff,

          v.                                          **DECISION AND ORDER**
                                                      08-CV-299S
CINCINNATI SUB-ZERO PRODUCTS, INC.
and INNERCOOL *therapies,* Inc.,

                    Defendants.


## I. INTRODUCTION

          Initially, this action was brought by Gaymar Industries Inc. ("Gaymar") alleging that

Cincinnati Sub-Zero Products, Inc. ("CSZ") violated its patent, No. 6,517,510 ("the '510

patent"). However, on September 29, 2009 this Court granted CSZ's application for a stay

in light of the pending *Inter Partes* Reexamination of the patent by the United States Patent

and Trademark Office ("PTO"). (Docket No. 91.) Since that time, upon reexamination, the

PTO effectively invalidated the patent, rendering Gaymar's claim moot. CSZ now moves

this Court for Leave to File a Second Amended Answer (Docket No. 96), asserting a

counterclaim that alleges that Gaymar engaged in inequitable conduct. Additionally, as part

of that motion, CSZ proposes that this Court (1) reinstate the case, (2) declare CSZ to be

the prevailing party, and (3) issue a "targeted discovery" scheduling order. Through a

Motion to Compel (Docket No. 110), CSZ also seeks additional discovery responses from

Gaymar, which were initially requested in 2008 pursuant to Gaymar's underlying claim. In

its third motion, CSZ  seeks to join Stryker Corp. ("Stryker") as a party under Fed. R. Civ.

P. 25(c). (Docket No. 114.) Finally, for its part, Gaymar opposes each of these motions

through its Cross-Motion to Dismiss. (Docket No. 101.) For the following reasons, CSZ's

motion to amend, including its three sub-parts, is granted. Further, its motions to compel and join are each denied. Likewise, Gaymar's motion is also denied.

## II. BACKGROUND

**A.     Facts[1]**

At issue in the underlying case were the parties' competing temperature management products for use in heat therapy, blood and fluid warming, and core body temperature management. Gaymar produces the Medi-Therm® III warming and cooling unit under the '510 patent; CSZ produces the Blanketrol®  III. The Medi-Therm® II, the predecessor to the Medi-Therm® III, delivers hot or cold water to an accompanying blanket, mattress pad, or chair pad to regulate a patient's body temperature. It is meant to stabilize a patient experiencing hypo- or hyperthermia. The '510 patent built on this concept and added a new feature whereby the device would regulate water temperature in a predetermined ratio to the patient's body temperature.

Relevant to the present action are allegations that Gaymar acted inequitably in bringing its initial complaint against CSZ. CSZ alleges six instances of such conduct.

First, CSZ claims that Gaymar intentionally failed to disclose the Medi-Therm® II Operations Manual (the "Manual") to the PTO when it applied for its patent. (Second Amended Answer, ¶ 21; Docket No. 98-2.) The Manual describes the operation of the Medi-Therm® II, including a description of the "manual mode," which enables the user to manually control the temperature of the blanket based on a pre-set temperature differential. (Id. ¶ 23.) This function is alleged to be essentially the same as claim 1 in the

---

[1]These facts are taken from CSZ's proposed Second Amended Answer and, for the purposes of this motion, all allegations must be accepted as true. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

'510 patent. (Id.) Therefore, CZO considers this prior art directly relating to the '510's patentability.

Second, CSZ claims that Gaymar intentionally failed to disclose the "Caruso article," which contemplates the benefits of cooling a patient with water that is not the "coldest available" to reduce patient discomfort. (Id. ¶ 27.) Claiming that this objective is the same as the only expressed objective of the '510 patent, CSZ asserts that the article is material and should have been disclosed.  Indeed, upon reexamination, the patent examiner found that the Caruso article was prior art that made gradient cooling a known technique. (Id.) Gaymar admits it had knowledge of the Caruso article. (Id. ¶ 28.)

Third, CSZ claims that Gaymar intentionally failed to disclose the American Association of Critical Care Nurses' Procedure Manual for Critical Care, Third Edition ("AACN manual") to the PTO. CSZ asserts that this manual is relevant in that it counsels against temperature decreases exceeding 1 degree Fahrenheit every 15 minutes, which relates to the "predetermined rate" claim of the '510 patent. (Id. ¶ 32.)

Fourth, CSZ claims that Gaymar intentionally failed to disclose an article by Roger Hubbard in the American Journal of Emergency Medicine, volume 6, number 3 ("Hubbard article"). Contradicting what Gaymar represented to the PTO, the Hubbard article teaches that significant body cooling occurs with relatively temperate water. (Id. ¶ 36.) CSZ believes that Gaymar's intent to deceive the PTO is demonstrated by the Hubbard article's inclusion in product literature describing the Medi-Therm® III.

Fifth, CSZ claims that Gaymar intentionally failed to disclose the "Stewart letter," wherein Dr. Thomas Stewart, a joint-inventor of the device associated with the '510 patent, described to a customer of the Medi-Therm® II (1) the capability of using gradient-

temperature control, (2) the benefits of using the manual mode to minimize discomfort and (3) the benefits of patient temperature control according to a predetermined rate according to the guidelines of the AACN manual. (Id. ¶ 41.) As stated by CSZ, "if the customer followed Dr. Stewart's instructions, [the Medi-Therm® II], performed claim 1 of the '510 patent [] several years before the filing of the [] application." (Id. ¶ 43.)

Sixth, CSZ claims that Gaymar intentionally failed to disclose United States Patent No. 5,486,204 entitled "Method of Treating a Non-Penetrating Head Wound With Hypothermia" issued on January 23, 1996. (Id. ¶ 45.) This patent, issued to Guy Clifton, who has previously consulted with Gaymar, also details the benefits of defined rates of temperature change like the '510 patent.  (Id. ¶ 48.)

**B.    Procedural History**

Gaymar filed its Complaint in this Court on April 18, 2008, alleging that CSZ's Blanketrol® III infringes its '510 patent. (Docket No. 1.) It moved for a preliminary injunction approximately three months later, on July 15, 2008. (Docket No. 3.) CSZ moved to stay these proceedings on September 10, 2008, in light of its pending request for the PTO to conduct *Inter Partes* Reexamination of the '510 patent. (Docket No. 21.) This Court granted that motion on September 28, 2009. (Docket No. 91.) In that Decision, this Court also dismissed as "moot with leave to reinstate" both Gaymar's Motion to Strike CSZ's Answer (Docket No. 70) and CSZ's Motion for Leave to Amend its Answer (Docket No. 72).

Thereafter, the PTO ultimately rejected all 134 claims in the '510 patent. (Docket No. 92-2.) As a result, after a status conference, this Court ordered CSZ to file a "motion addressing reinstatement, amendment, determination of prevailing party and targeted discovery." (Docket No. 94). CSZ's first motion (Docket No. 96) responds to that Order.

4

Gaymar opposes CSZ's motion and seeks dismissal (Docket No. 101.) Further, CSZ seeks to compel the production of certain documents (Docket No. 110) and seeks to join Stryker as a party (Docket No. 114).

## III.  DISCUSSION

**A.    Reinstatement & Residual Motions**

As an initial matter, this Court must address the status of the Stay Order. By the plain terms of that Order, this case was reinstated when the PTO rejected all of the claims in the '510 patent. This Order will contain a directive to the Clerk of the Court to formally re-open the case. The two motions pending at that time, which were denied as moot pending reinstatement, are again denied as moot, but for a different reason – the relief requested in those motions is renewed, albeit under different title, in the present motions and will be addressed herein.[2]

**B.    CSZ's Motion for Leave to Amend & Gaymar's Motion to Dismiss[3]**

35 U.S.C. § 285 allows courts to award reasonable attorney fees to prevailing parties in "exceptional" patent infringement cases. CSZ's proposed Second Amended Answer presents a counterclaim for attorney fees and, as detailed above, asserts six instances of inequitable conduct in Gaymar's patent application to the PTO. Inequitable conduct at the PTO level, if proven, can render a case "exceptional," subject to an attorney-fee award.  See Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1375-76

---

[2]Gaymar sought to strike CSZ's answer and counterclaim (Docket No. 29), an argument which it renews here through their motion to dismiss.
    CSZ sought leave to file an amended answer. (Docket No. 72.) Presently, it seeks to file a second amended answer.

[3]These motions are grouped together because Gaymar's Motion to Dismiss is a response to CSZ's Motion to Amend.

(Fed. Cir. 2001) (exceptional cases are normally those involving bad faith litigation or those involving inequitable conduct by the patentee in procuring the patent).

Gaymar opposes CSZ's motion to amend and seeks dismissal on several grounds discussed in detail below.[4]

### 1.    Justiciability

Gaymar first opposes CSZ's motion to amend by arguing that the case is moot, presenting no case or controversy on which this Court can rule, and arguing that as result, the case should be dismissed. CSZ believes that the case is on-going, specifically with respect to the determination of attorney fees, for which it states it will apply if granted leave to amend its answer.

In support of its argument, Gaymar relies on Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed. Cir. 1995), *abrogated on other grounds* by MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 S.Ct. 764, 166 L .Ed. 2d 604 (2007). But this case is inapposite. In Super Sack, the court found that Super Sack's unconditional agreement "not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase" was sufficient to divest the court of jurisdiction over Chase's counterclaims for non-infringement, invalidity and unenforceability. 57 F.3d at 1059. Such is clearly not the case here where CSZ's action does not implicate the validity of the underlying patent, but seeks attorney fees for alleged improper conduct.

---

[4]It does not, however, dispute CSZ's claim that it is the prevailing party by virtue of the PTO's decision invalidating the patent.

Instead, this case is governed by Monsanto Co. v. Bayer Bioscience N.V., 514 F.3d 1229 (Fed. Cir. 2008). There, Bayer appealed the district court's decision, which held that its patents were unenforceable due to inequitable conduct. Bayer premised its appeal on the fact that the district court's only basis for jurisdiction was § 285 – the court was divested of jurisdiction on other grounds when Bayer dropped its infringement claim and entered into a covenant promising not to bring future claims. But the Federal Circuit affirmed the district court's decision, finding that § 285 confers on courts "the jurisdiction to hold [] patents unenforceable for inequitable conduct." Monsanto, 514 F.3d at 1243.

 Although Gaymar notes that Monsanto is not an identical case – where after the underlying claim is mooted, a party seeks to amend its answer – the holding nonetheless applies equally here. Monsanto held that "[e]ven if filing such a covenant may divest the court of jurisdiction over a declaratory judgment action regarding these patents, under our precedent the district court retained *independent jurisdiction* over Monsanto's request for attorney fees under 35 U.S.C. § 285." Id. at 1242 (citations omitted and emphasis added.) Thus its holding clearly stands for the proposition that § 285 confers on courts an independent basis for jurisdiction. Indeed, the precedent referred to by the Monsanto court is equally clear. See Highway Equip. Co. v. FECO, Ltd., 469 F.3d 1027, 1033 n. 1 (Fed. Cir. 2006) ("While the covenant [not to sue for infringement] may have eliminated the case or controversy pled in the patent-related counterclaims and deprived the district court of Article III jurisdiction with respect to those counterclaims, the covenant does not deprive the district court of jurisdiction to determine the disposition of . . . the request for attorney fees under 35 U.S.C. § 285.").

7

Gaymar seeks to distinguish these cases by arguing that CSZ is seeking to insert an entirely new claim into a closed proceeding. It points out that in <u>Monsanto</u>, the § 285 claim was part of the litigation from the beginning and simply remained when the underlying patent claim was dismissed. *Compare* <u>Revolution Eyewear Inc., v. Aspex Eyewear Inc.</u>, No. CV 03-5965PSG (C.D. Cal. Sept. 18, 2009) (unpublished) (adopting this proposition) *with* <u>Special Devices v. OEA</u>, 131 F. Supp. 2d 1171, 1178 (C.D. Cal. 2001) (allowing a claim for attorney fees, brought for the first time after summary judgment, to go forward and noting that it was "unaware of any authority which requires that an issue has to be previously litigated in order for it to be a basis for a finding of inequitable conduct."). But even if this distinction could strip this Court of its jurisdiction, the facts do not align with Gaymar's claim. In its initial answer, CSZ explicitly sought attorney fees. (<u>See</u> Answer; Wherefore clause, "D"; Docket No. 14.) Therefore, CSZ is not seeking to insert a wholly new allegation, but rather is seeking to supplement and clarify the facts and cause of action related to that issue.

As such, this Court can adjudicate CSZ's motion to amend, the merits of which will be addressed next.

### 2.    Prejudice & Delay

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(1)(2). Generally, requests for leave are liberally treated and such requests are granted absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." <u>Foman v. Davis</u>, 371 U.S. 178,182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); <u>see also</u> <u>Desabio v.</u>

Howmedica Osteonics Corp., --- F. Supp. 2d ---, 2011 WL 4074391, at *2 (W.D.N.Y. Sept. 13, 2011).

The liberal pleading standards found in Rule 15 do not disappear simply because the principle claim in this case has been rendered moot or has been decided. See Williams v. Citigroup Inc., 659 F.3d 208, 214 (2d. Cir. 2011) ("The Foman holding cannot be reconciled with the proposition that the liberal spirit of Rule 15 necessarily dissolves as soon as final judgment is entered.").

Gaymar argues that leave should be denied because it would unduly burden it and this Court. There is no question here that if CSZ's motion were granted, it would delay the resolution of this case because otherwise the case would be closed. The Second Circuit has found that significant delay in the resolution of the dispute is a factor that courts should consider in ruling on motions to amend, see Block v. First Blood Assocs., 988 F. 2d 344, 350 (2d Cir. 1993), and that courts should consider the value of finality in such a situation as this. See Williams, 659 F.3d at 213. However, these considerations must be balanced against the strong countervailing interest in resolving CSZ's attorney fee claim, which would be lost if the motion were denied. See  New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (emphasizing the Second Circuit's strong preference for resolving disputes on the merits).

Although granting leave to amend would delay resolution of this case, this is not a situation where the delay can be attributed to CSZ. Although it moved for the stay, it did not do so for dilatory reasons, and this Court found that the benefits of a stay outweighed any detrimental effects. See Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc., No. 8 CV-299S, 2009 WL 3162213, at *3-*4 (W.D.N.Y. Sept. 28, 2009). This case is unlike

Chamberlain Group v. Lear Corp., No. 05 C 3449, 2010 WL 3632471 (N.D. Ill. Sept. 10, 2010) relied on by Gaymar, where the court denied leave because, *inter alia*, the defendant had "every opportunity to explore, develop, and amend its counterclaim" before it finally sought leave to do so five years after filing its answer. Id. at *3. Instead, as both parties acknowledge, this is an atypical case. Had the stay not been granted, this Court would have had to rule on CSZ's First Proposed Amended Answer, which sought to add much of the factual assertions associated with its claim for attorney fees and which was filed only seven months after this proceeding was initiated. (See Proposed Amended Answer, ¶¶ 18-39; Docket No. 77-5.) As such, unlike the defendants in Chamberlain, CSZ did not fail to promptly seek leave to amend without explanation. See 2010 WL 3632471, at *3-*4. While the stay was in effect, CSZ was unable to seek such relief.

Nor can Gaymar contend that it is prejudiced by a lack of notice. Gaymar was aware, as early as October 2008, that CSZ asserted a defense of inequitable conduct. Gaymar even responded to this argument in its Reply Memorandum in Further Support of a Preliminary Injunction. (pp. 10-11; Docket No. 71.) Although the factual allegations that it responded to in that memorandum were much more sparse than those found in the Second Amended Answer, as noted above, Gaymar was aware of nearly all of the current facts supporting the inequitable conduct claim in November 2008, when CSZ moved to amend its original answer and attached its proposed amended answer.

Unquestionably Gaymar believes that it will be prejudiced if CSZ is permitted to amend its answer – it argues forcefully against this relief. However, whatever prejudice it may suffer in the form of continued litigation – litigation that, it should be noted, was initiated by Gaymar – does not overcome the interests in justice allowing CSZ to plead and

argue its counterclaim on the merits. <u>See</u> <u>Foman</u>, 371 U.S. at 182 ("Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by [the movant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.") Having found no undue delay, undue prejudice, or bad faith, this Court will grant CSZ's motion for leave to amend.

**3.    Judicial Estoppel**

Gaymar also argues that CSZ is judicially estopped from amending its claim because it asserted, in its motion for a stay, that if the stay were granted it would eliminate the need for all future litigation.

The judicial estoppel doctrine is "designed to prevent the perversion of the judicial process," by preventing parties from taking inconsistent positions at different stages of litigation simply because their interests have changed. <u>Data Gen. Corp. v. Johnson</u>, 78 F.3d 1556, 1565 (Fed. Cir.1996). While the decision to apply the doctrine lies  within the court's discretion, the Supreme Court has identified several factors that "typically inform the decision whether to apply this doctrine." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). First among these factors is that a party's later position must be "clearly inconsistent" with its earlier position. <u>Id.</u>

Applying this factor, this Court finds that it would inappropriate to bar CSZ's claim on estoppel grounds because its positions are not "clearly inconsistent." Although, as Gaymar notes, CSZ certainly represented that it believed that this action would cease if the PTO invalidated the '510 patent, such a statement does not directly contradict its current claim for attorney fees. <u>See</u> <u>Rodal v. Anesthesia Group of Onondaga</u>, 369 F.3d 113, 119

11

(2d Cir. 2004). ("[A] court must carefully consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable contradiction.") (Citation omitted). In this context, judicial estoppel may be appropriate if, for example, to gain a perceived tactical advantage, CSZ argued that it was not due attorney fees but later changed course, and argued the opposite. See, e.g., HSBC Bank USA, Nat. Assn. v. Adelphia Commc'ns Corp., No. 07-CV-553A, 2009 WL 385474 (W.D.N.Y. Feb. 12. 2009) (applying judicial estoppel where the defendant consistently represented to the bankruptcy court that it was the sole owner of two loans and represented to another court that it was not the true owner); New Hampshire, 532 U.S. at 751(applying judicial estoppel where the state of New Hampshire argued in a previous action that its state boundary was in different location than that which it proposed in the present action). Such is clearly not the case here. In fact, most of CSZ's representations that the case would be moot reflect a *possible* benefit of a stay and could be interpreted to relate to the substantive litigation concerning the patent infringment claim, not an attorney fees claim. Accordingly, although its positions do not neatly align with one another, they also do not directly contradict each other. For that reason, Gaymar's motion on this ground is denied.

### 4.    Rule 9(b)

Finally, Gaymar opposes CSZ's motion to amend by arguing that its proposed Second Amended Answer does not meet the pleading requirements set out in Federal Rule of Procedure 9(b).

In full, Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." Fed R. Civ. P 9(b). "Although 'knowledge' and 'intent' may be averred generally, our precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1327 (Fed. Cir. 2009).

CSZ has met this burden. Its Second Amended Answer, as recited above, alleges six instances of inequitable conduct. In each, CSZ alleges with particularity the circumstances of the fraud. Each allegation concerns a specific document that was withheld from the PTO office. In each allegation, CSZ provides sufficient facts such that the named actors had knowledge of the documents and failed to disclose said documents. It is alleged that many of these documents were in Gaymar's possession, referenced in its own product literature,[5] and relied upon in creating the Medi-Therm® III. In other words, CSZ's factual pleadings permit a reasonable inference of deceptive intent, thus clearing the Rule 9(b) hurdle. See id. at 1327-28, nn. 4, 5.

## C. Targeted Discovery

In an effort to fully prosecute its claim, CSZ seeks what it calls targeted discovery on the issue of inequitable conduct. It proposes that it be granted leave to (1) finish the depositions of Dr. Stewart and Hermann Pohl and (2) take the depositions of patent attorneys Kevin D. McCarthy and Georgia Evans. It also seeks the ability to conduct a

---

[5]Gaymar points out that publically citing allegedly prior art may negate an inference of intent because it is inconsistent with fraudulent or deceptive concealment. See Exergen Corp., 575 F.3d at 1329, n. 5. But such a consideration does not overcome the evidence implying that Gaymar withheld pertinent information from the PTO.

deposition of any declarant and proposes the same plan for Gaymar. It further proposes that each party be permitted 60 days to complete this targeted discovery.[6]

Gaymar opposes this motion arguing that because the substantive litigation is now moot, it would be inappropriate for this Court to allow further discovery on the limited issue of attorney fees.

Initially, it should be noted that no discovery scheduling order was ever issued in this case and although the parties began the process of discovery, it was truncated by the Stay Order.

The scope of discovery is within the sound discretion of the court, In re Agent Orange Product Liability Litigation, 517 F.3d 76, 103 (2d Cir. 2008), and this Court finds that the discovery plan outlined by CSZ, with minor modifications, is both fair and appropriate. Considering that the purpose of discovery is to provide both parties with information essential to properly litigate the case, denying this motion would leave CSZ at an unfair disadvantage. See Sackman v. Liggett Group, Inc., 173 F.R.D. 358, 361 (E.D.N.Y.1997) ("The purpose of discovery is to provide both parties with information essential to proper litigation of all the facts.") (Citations and quotation marks omitted.) Granting it, on the other hand, would once again further the goal of determining claims on their merits. Moreover, this Court must look to facts of the case to determine whether a fee award is inappropriate – it would be improper to make a ruling on an incomplete factual record. CSZ also correctly notes that a denial would effectively punish it for applying for reexamination at the PTO (thereby saving each party and this Court extensive time and

_____

[6]Although Gaymar objects to CSZ's discovery plan as too extensive, it does not offer a plan of its own.

cost) instead of pursuing litigation in this Court, where it could have engaged in full discovery.

There are, however, considerations weighing against a grant allowing further discovery. Presented with a similar situation, the court in Aventis Cropscience, N.V. v. Pioneer Hi-Bred International, Inc., 294 F. Supp. 2d 739 (M.D.N.C. 2003) denied the defendant's request for *post-hoc* discovery related to attorney fees. It noted that allowing such discovery would increase the scope and frequency of an award that is only allowed in "exceptional circumstances" and that it would result in a "second litigation" that "would completely dwarf the resolution of the basic patent law issues that gave rise to the controversy." Id. at 744,  745. Pointing to Supreme Court precedent counseling against such results, it was understandably concerned about the fee dispute spiraling out of control. Id. at 744.

These are valid concerns and this Court has taken them under consideration. But balanced against the principle purpose of discovery – to provide facts essential to proper litigation –  and especially considering that the discovery here will be limited in scope, this Court finds that the concerns outlined in Aventis, where the supplemental discovery was to be "extensive," do not warrant a limitation on CSZ's claim here.

Given this close balance of interests, the parties are instructed to follow the discovery plan closely, avoid unnecessary motion practice, and refrain from seeking extensions.

## D.    CSZ's Motion to Compel

Moving to CSZ's second motion, it seeks to compel disclosure of the "SARNS Operation Manual," which it believes was improperly withheld in a document request from

2008. Gaymar does not respond substantively to the motion, but instead echoes arguments made above: that this action is closed and that motions to compel are inappropriate because the case is stayed. Gaymar, at least in part, opposes the motion because of the status of the case and asserts that it does not need to produce documents while the case is stayed. It asks that if this Court were to grant CSZ's combined motion, that it be granted permission to answer the counterclaim and then respond to the motion to compel. Having granted CSZ combined motion, this Court will grant that request.

Gaymar, in light of its argument that the motion to compel was inappropriate and unjustified because the case was stayed, also seeks fees pursuant to Fed. R. Civ. P. 37. Gaymar's motion is denied. It was unclear when, or if, the stay was lifted and thus CSZ was not unreasonable in believing, as this Court has ruled, that the stay was lifted upon the PTO's final determination. Indeed, suggesting that the case had been resumed, the parties appeared before this Court on September 10, 2010 (Docket Nos. 93,94), before CSZ's motion to compel was filed. A fee award would therefore be unjust. See Fed. R. Civ. P. 37(a)(5)(b) ("But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.").

E.     CSZ's Motion to Join Stryker as a Party

Finally, CSZ seeks to join Stryker, a company that recently acquired Gaymar, under Fed. R. Civ. P. 25(c). CSZ is concerned that its efforts at discovery would be thwarted if Gaymar were to be shut down and documents transferred to Stryker. Gaymar however submits evidence demonstrating that Stryker is currently Gaymar's parent company, that Gaymar remains an existing and operating company, and that all documents in question remain in Gaymar's possession. (Declaration of Jodyann Galvin ¶¶ 2-4.) Based on this

16

evidence, this Court finds that CSZ's concerns are premature. If joinder becomes necessary at a later time, this Court can address it then. <u>See</u> 6 Moore's Federal Practice § 25.34[2] (3rd ed. 2009) ("Rule 25 does not require that the court or the parties take any action after an interest has been transferred. Instead, the suit may continue with the original parties. Joinder or a substitution is not required unless the court determines, in its discretion, that the transferee's presence would facilitate the case."). Accordingly, CSZ's motion to join Stryker is denied.

## IV. CONCLUSION

For the reasons discussed above, CSZ's combined motion is granted in its entirety; its motions to compel discovery and to join Stryker are denied; and lastly Gaymar's motion to dismiss is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that the Clerk of the Court shall re-open this case.

FURTHER, that CSZ's Motion Addressing Reinstatement, Amendment, Determination of Prevailing Party, and Targeted Discovery (Docket No. 96) is GRANTED.

FURTHER, that CSZ shall file its Second Amended Answer by January 30, 2012.

FURTHER, that Gaymar's Motion to Dismiss (Docket No. 101) is DENIED.

FURTHER, that CSZ's Motion to Join Stryker (Docket No. 114) is DENIED.

FURTHER, that CSZ's Motion to Compel (Docket No. 110) is DENIED without prejudice.

FURTHER, that CSZ shall file a Motion to Compel, if necessary, by February 6, 2012.

FURTHER, that Gaymar shall file its Answer and, if necessary, a memorandum in opposition to CSZ's Motion to Compel by February 20, 2012.

FURTHER, that CSZ and Gaymar have until April 20, 2012 to conduct their discovery, which may include depositions of any declarant, Dr. Stewart, and Hermann Pohl.

FURTHER, that CSZ shall file its fee motion by May 18, 2012.

FURTHER, that Gaymar shall file its opposition to the fee motion by June 15, 2012.

FURTHER, that CSZ shall file its reply by June 29, 2012.


Dated:          January 19 , 2012
                Buffalo, New York


                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                                  Chief Judge
                                            United States District Court

18