UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GAYMAR INDUSTRIES, INC.,                                **REPORT,**
**RECOMMENDATION AND**
                                    Plaintiff,            **ORDER**

v.                                                        08-CV-00299(S)(M)


CINCINNATI SUB-ZERO PRODUCTS
INC., and INNERCOOL therapies, Inc.,

                                    Defendants.
_____

      This case was referred to me by Hon. William M. Skretny for supervision of

nondispositive proceedings [124],[1] and for preparation of a Report and Recommendation on

dispositive proceedings [145]. Before me is the motion by defendant Cincinnati Sub-Zero

Products Inc. ("CSZ") for an award of attorney's fees and expert witness fees pursuant to 35

U.S.C. §285 and this court's inherent authority [158], and the motion by plaintiff Gaymar

Industries, Inc. ("Gaymar") to strike the declarations of Richard A. Killworth and for an award of

attorney's fees [163]. Oral argument was held on December 12, 2012 [170].

      For the following reasons, Gaymar's motion to strike is granted in part and denied

in part,[2] and I recommend that CSZ's motion for attorney's fees be denied.

---

[1]      Bracketed references are to the CM/ECF docket entries.

[2]      "A decision to admit or exclude expert testimony is considered 'nondispositive' of the litigation." RMed International, Inc. v. Sloan's Supermarkets, Inc., 2000 WL 420548, *2 n. 1 (S.D.N.Y. 2000).

**BACKGROUND**

Gaymar commenced this action on April 18, 2008, alleging infringement of U.S. Patent No. 6,517,510 (the "'510 patent"), entitled "Automatic Patient Control Device", which relates to a method for regulating the temperature of a desired medium that is applied to the surface of a mammal. Complaint [1]. On July 15, 2008, Gaymar moved for a preliminary injunction [3], as well as an expedited hearing and condensed briefing schedule [6]. In support of its motion for a preliminary injunction, Gaymar submitted the Declaration of Robert Mates, Ph.D, [3-2], who concluded that "the CSZ System embodies each and every limitation of at least the following claims of the '510 patent: 1, 2, 5, 7-12, 19, 20, 23, 25-27, 29-31, 37, 38, 41, 43-45, 47-49, and 55." Id., ¶12.

At a conference before Judge Skretny on July 21, 2008, CSZ's attorney (Thomas Burger) stated that "it's no secret to this particular plaintiff that [CSZ] is going to contest the validity of this patent. We're going to assert that . . . there is at least a substantial new question of patentability as to every single one of the 134 claims. We're going to file requests to reexamine with the U.S. Patent Office ['PTO'] . . . . and then we're going to ask this Court to stay this lawsuit until the patent office decides. The reason that makes sense to do that is because the plaintiff has the burden in this case to make a clear showing of validity and infringement. The briefing papers don't make any showing at all about validity.  It's the burden of the plaintiff". [23], p. 12.

Gaymar's attorney (Robert Lane) responded: "We get the presumption that our patent is valid. They can then come forward and show a prima facie case of invalidity.  If that's true, the burden will shift back." Id., p. 16. When asked by Judge Skretny whether Gaymar

wished to supplement its motion papers, Mr. Lane replied that "as of right now, we don't need anything. If that issu[e] [validity] is raised, we would." Id., p. 18. Judge Skretny then stated: "Well, if what you're telling me is you're prepared to stand on what you submitted, and then Mr. Burger can brief your application and expand the issues, and then you get the opportunity to reply . . . . that would seem to me to make some kind of sense . . . because to leave your application unresponded to . . . is sort of counter-productive, because then we don't really know what the full picture is. I think what we'll do . . . is give you maybe ten days to just reassess whether you have everything in your papers that you want." Id. The parties then agreed to a briefing schedule, to be followed by a further status conference on November 17, 2008. Id., pp. 19-22.

On July 31, 2008, CSZ submitted to the PTO a "Request for *Inter Partes* Reexamination" of the claims of the '510 Patent [21-3, 21-4], "focus[ing] on a prior art printed publication, the March 1985 SARNS Temperature Control and Monitor System Operators Manual ('the SARNS 85 Manual')". [21-3], p. 5. CSZ argued to the PTO that "the SARNS 85 Manual anticipates independent claims 89 and 111, as well as dependent claims 92-95, 97, 114-117, and 119. Also, in conjunction with the admitted prior art, namely the MEDI-THERM II® device that is described in the background of the '510 patent, the SARNS 85 Manual renders obvious independent claims 1, 19, and 37 of the '510 patent, as well as dependent claims 2, 4-11, 15-16, 18, 20, 22-30, 34-35, 38, 40-48, 52-53, 55, 90-91, 99-100, 112-113, and 121-122". Id., p. 6.

On September 10, 2008, CSZ filed an Answer and Counterclaim [20] in which it denied infringement (id., ¶25) and alleged that "the '510 patent is invalid and/or unenforceable

for failure to comply with the conditions and requirements for patentability specified in Title 35 U.S.C., including, but not limited to, 35 U.S.C. §§102, 103, and/or 112" (id., ¶¶17, 26). CSZ also asked that the case be "decreed exceptional pursuant to 35 U.S.C. §285 and CSZ be awarded their costs and attorney fees incurred in defending this action". Id., p. 4.

      That same day, CSZ moved to stay proceedings in the litigation pending the outcome of the PTO's reexamination of the claims in suit, "so that the parties and this Court may avail themselves of the . . . PTO's expertise in determining the patentability of the claims at issue in this litigation". CSZ's Memorandum of Law [21-6], pp. 2-3.

      On October 14, 2008, CSZ submitted its opposition to the motion for preliminary injunction [38-41, 85]. CSZ argued, *inter alia*, that that Gaymar had unreasonably delayed in seeking injunctive relief because CSZ's product had been on the market for several years, that Dr. Mates' infringement analysis was erroneous, and that Gaymar had engaged in inequitable conduct before the PTO, rendering the entire patent unenforceable. CSZ's Memorandum of Law [85]. It further argued that "[a]t the hearing in July, Gaymar denied that it had any obligations regarding validity . . . . This court gave Gaymar an opportunity to address its flawed position, with a chance to update its motion for a preliminary injunction. Despite having this second chance to correct itself, Gaymar did not supplement its preliminary injunction motion. Instead, Gaymar chose to ignore its obligations regarding validity". Id., pp. 7, 8.

      In connection with its inequitable conduct argument, CSZ also submitted the Declaration of patent attorney Richard A. Killworth, who opined that Gaymar had violated its duty of candor to the PTO by failing to disclose two items of allegedly material prior art: the

"Medi-Therm II Operator's Manual" and the "Caruso Article". Killworth Declaration [40], ¶¶15, 26.

In reply, Gaymar submitted the Declaration of Greg Pepe, its Senior Director for Engineering and Quality, who stated that upon observing CSZ's product manual in January 2008, he "suspected that it infringed" the '510 patent, whereupon he "engaged in discussions with counsel" before the action was commenced in April 18, 2008, and that the preliminary injunction motion was served immediately upon the unsuccessful conclusion of settlement discussions. Pepe Declaration [75], ¶¶8-9. Gaymar also submitted a Reply Declaration from Dr. Mates [74], in which he responded in detail to CSZ's arguments regarding claim construction and non-infringement (id., ¶¶7-21). He also discussed why the Sarns TCM unit did not anticipate the '510 patent (id., ¶¶22-43), and why the prior art cited by CSZ would not render the claims of the '510 patent obvious to one skilled in the art (id., ¶¶44-73).

Gaymar moved to strike Killworth's Declaration, arguing, *inter alia*, that he "is not a technical expert. He does not even know what art is relevant to the '510 patent. He admits that he is not skilled in the art associated with the '510 patent. He has not reviewed the references cited in the '510 patent." Gaymar's Memorandum of Law [70-4], p. 2. In response, CSZ stated that Killworth "is not a technical expert in the *technology* of this case. Rather, he is a technical expert in that upon which he opines, namely USPTO practice". CSZ's Memorandum of Law [86], p. 16 (emphasis in original). "Of course, in addressing the duty of candor, Mr. Killworth opines on the materiality of the references Gaymar did not disclose to the USPTO and the fact that 'apparently they intentionally did not do so.' Yet there is nothing improper with Mr.

Killworth giving his opinion regarding the factual questions of materiality and/or intent, nor his opinion regarding Gaymar's candor before the USPTO." Id., p. 14.

On October 24, 2008, the PTO granted CSZ's request for reexamination of all 134 claims of the '510 Patent, initially rejected those claims, and invited Gaymar to file a response within two months of that date, demonstrating why the claims should not be finally rejected [67-2]. At the status conference before Judge Skretny on November 17, 2008 [90], the parties discussed the possible impact of the PTO's action upon the litigation. CSZ's attorney admitted that the PTO's initial action was "routine" (id., p. 6), and Gaymar's attorney stated that "well over 90 percent of reexamination requests are granted" (id., p. 8). While CSZ argued that "the patent office's rejection of all 134 claims [is] fatal to a preliminary injunction", Judge Skretny replied that "I've looked at it to some extent, and . . . the cases go both ways" (id., p. 11). At that time he took Gaymar's motion for a preliminary injunction and CSZ's motion for a stay of proceedings under advisement [83].

On December 22, 2008, Gaymar filed its response to the PTO's initial rejection of the patent claims [160-10]. While agreeing to the cancellation of claims 18, 28, 46 and 55-134 (id., p. 3), Gaymar argued at length that the remaining claims were not obvious in light of the prior art, including Sarns. Id., pp. 12, *et. seq*.

On February 11, 2009 Gaymar moved to present additional case authority supporting the proposition that a stay of proceedings may be denied even where the PTO has initially rejected patent claims in reexamination proceedings. Corrected Galvin Declaration [89-2], ¶¶3-4.

On September 28, 2009, Judge Skretny denied Gaymar's motion for a preliminary injunction and granted CSZ's motion for a stay of proceedings, reasoning that the PTO's "non-final action rejecting all 134 claims in the '510 patent" raises "a substantial issue of patent validity". Decision and Order [91], p. 3. However, notwithstanding CSZ's arguments as to invalidity of the '510 patent and Gaymar's inequitable conduct in applying for that patent, Judge Skretny recognized the possibility that Gaymar might yet prevail: "should Gaymar prevail at the PTO and the '510 patent be determined valid, Gaymar may, if otherwise able, recover lost profits and money damages from CSZ." Id., p. 6. He ordered the action "stayed pending a final resolution of the PTO's reexamination of the '510 patent", and directed the parties to "file a motion within 14 days of the PTO's reexamination decision requesting the scheduling of a status conference".  Id., p. 8.[3]

On November 23, 2009, the PTO reaffirmed its cancellation of all claims of the '510 patent and issued a notice of right to appeal [164-24]. On December 21, 2009, Gaymar filed a Notice of Appeal to the Board of Patent Appeals and Interferences;[4] however, it did not perfect that appeal.  Instead, on March 18, 2010 Gaymar sent CSZ a proposed stipulation discontinuing the action on the merits, "with each party to bear its own costs and fees" [98-18]. CSZ responded that same day, stating that it "intends to pursue its counterclaims against Gaymar, to have the

---

[3]       In view of his denial of Gaymar's motion for a preliminary injunction, Judge Skretny also denied as moot Gaymar's motion to strike the Killworth Declaration [70] and its motion for permission to present additional case authority [89]. Decision and Order [91], p. 3, n. 2.

[4]       Although I could not find that Notice in the record, it is mentioned in CSZ's Notice of Cross Appeal [164-26].

lawsuit declared exceptional under 35 USC §285, and to recover its attorneys' fees related to the lawsuit and the reexamination" [98-19].

On April 16, 2010, Gaymar notified the PTO that it was abandoning the reexamination, and asked that the PTO issue a reexamination certificate cancelling all claims of the '510 patent [98-17]. The PTO issued that certificate on July 13, 2010 [92-2]. On October 12, 2010 CSZ moved to reinstate this action, to amend its answer to assert additional examples of inequitable conduct by Gaymar, to dismiss Gaymar's infringement claims and rule that CSZ is the prevailing party, and to obtain targeted discovery relating to its claim for attorney's fees under §285 [96]. Judge Skretny granted that motion on January 20, 2012 [119].

Following a series of settlement discussions, at a status conference on August 20, 2012 [155] I suggested to counsel that in lieu of further discovery, they "go to the briefing [of the §285 motion], reserving the right to seek discovery before the motion is decided, that is, revealed in the briefing to be necessary and something that isn't already covered . . . . That you brief the motions; and then if either side can demonstrate that their presentation is incomplete because they needed this additional information that they don't already have, I would consider that. And if not, we go on that basis." Id., pp. 30, 31. With the parties' consent, I confirmed this procedure by Text Order dated September 5, 2012 [154].

CSZ filed its motion for attorney's fees on October 25, 2012 [158]. Included in its submissions in support of the motion was Mr. Killworth's Supplemental Declaration [161] in which he "reaffirm[ed] the substance" of his previous Declaration [40] "except to the extent that it needs to be supplemented and updated due to circumstances that have changed since October 14, 2008".  Supplemental Declaration [161], ¶1.  In addition to the two items of prior art

discussed in his initial Declaration, Killworth discussed another four items of prior art in light of the new "but-for" materiality standard enunciated in Therasense Inc. v. Becton, Dickinson & Co., 649 F.3d 1276 (Fed. Cir. 2011), namely that "[p]rior art is but-for material if the USPTO would not have allowed a claim had it been aware of the undisclosed prior art." Killworth Supplemental Declaration [161], ¶10 (quoting Therasense, 649 F.3d at 1291)). He concluded that each of the six items of undisclosed prior art satisfied the "but-for" materiality standard. Id., ¶¶17, 22, 27, 35, 41, 48, 54.

In addition to opposing CSZ's motion for attorney's fees, Gaymar has moved to strike both Killworth declarations [163].


## ANALYSIS

### A.   The Standard for an "Exceptional Case"

"A district court has discretion to award reasonable attorney fees to a prevailing party in a patent case if the court determines that the case is 'exceptional.' 35 U.S.C. §285." MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 915 (Fed. Cir. 2012). As the word "exceptional" suggests, it "is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits." Forest Laboratories, Inc. v. Abbott Laboratories, 339 F.3d 1324, 1329 (Fed. Cir. 2003), cert. denied, 540 U.S. 1109 (2004). "Rather, [§285's] purpose is to provide discretion where it would be grossly unjust that the winner be left to bear the burden of his own counsel [fees] which prevailing litigants normally bear." J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc., 822 F.2d 1047, 1052 (Fed. Cir. 1987) (emphasis in original).

"A determination whether to award attorney fees under §285 involves a two-step process. First, a district court must determine whether the prevailing party has proved by clear and convincing evidence that the case is exceptional . . . . Second, if the district court finds the case to be exceptional, the court must then determine whether an award of attorney fees is appropriate and, if fees are appropriate, the amount of the award." Eon-Net LP v. Flagstar Bancorp, 653 F.3d 1314, 1323-24 (Fed. Cir. 2011), cert. denied, 132 S.Ct. 2391 (2012).

"Litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under §285." Rambus Inc. v. Infineon Technologies Ag, 318 F.3d 1081, 1106 (Fed. Cir.), cert. denied, 540 U.S. 874 (2003). "Absent litigation misconduct or misconduct in securing the patent, sanctions under §285 may be imposed against the patentee only if both (1) the patentee brought the litigation in bad faith; and (2) the litigation is objectively baseless." Eon-Net, 653 F.3d at 1324. "Under this exacting standard, the plaintiff's case must have no objective foundation, and the plaintiff must actually know this. Both the objective and subjective prongs . . . must be established by clear and convincing evidence." iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011).

**B.      Were Gaymar's Claims "Objectively Baseless"?**

CSZ argues that "Gaymar's case was objectively baseless for one simple reason: the Sarns 85 Manual disclosed gradient temperature control, the only feature that distinguished the asserted claims of the '510 patent from the prior art. The Sarns 85 Manual represented an immovable roadblock for the asserted claims of the '510 patent." CSZ's Reply Memorandum [167], pp. 6-7. "'This case was never even close to being close, and it could have been resolved

quickly' . . . . It was impossible for Gaymar to win with a patent that claimed gradient temperature control, given that the prior art Sarns 85 Manual already taught gradient temperature control." Id., p. 11 (*quoting* Astrazeneca AB v. Dr. Reddy's Laboratories, Ltd., 2010 WL 1375176, *4 (S.D.N.Y. 2010), app. dismissed, 2010 WL 8400115 (Fed. Cir. 2010)).

If that were true, then CSZ did not need to await the outcome of the PTO reexamination proceedings - instead, it could have moved for summary judgment, as did the defendant in Astrazeneca ("the Court dismissed Astra's Complaint on summary judgment. Astra's appeal was thrown out summarily as well"). Id. However, in order to obtain that relief, CSZ would have had to produce "clear and convincing" evidence of invalidity. *See* Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1358-59 (Fed. Cir. 2001) ("To succeed with a summary judgment motion of invalidity . . . the movant must . . . show that the facts not in dispute are clear and convincing in demonstrating invalidity"); Titan Tire Corp. v. Case New Holland, Inc. 566 F.3d 1372, 1376 (Fed. Cir. 2009) ("an alleged infringer who raises invalidity as an affirmative defense has the ultimate burden of persuasion to prove invalidity by clear and convincing evidence").

Rather than confronting that high standard, CSZ elected instead to seek reexamination by the PTO, since "the PTO and the courts employ different standards of proof when considering validity". Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1427 (Fed. Cir. 1988). "Whereas clear and convincing evidence is required to invalidate a patent in district court, a patent can be invalidated during PTO reexaminations by a simple preponderance of the

evidence." Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 548 n. 6 (Fed. Cir. 2011).[5]

While CSZ cannot be faulted for its tactical decision to challenge validity under the PTO's lower standard of proof, in light of that decision I fail to see how CSZ can now claim to have proven, by "clear and convincing evidence", that Gaymar's claims were objectively baseless.[6] *See* Ruben v. Warren City Schools, 825 F.2d 977, 988 (6th Cir. 1987), cert. denied, 485 U.S.934 (1988) ("To the extent defendants now argue [plaintiff] included legally groundless claims . . . their failure to promptly file a motion to dismiss these prayers for relief precludes a determination that [counsel] acted in bad faith"); Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1088 (2d Cir. 1977) ("Our conclusion that Andersen was not added as a defendant in bad faith is reinforced by the fact that Andersen failed to move to dismiss Claims 3 and 5 until the eve of trial. If appellants' claims were completely without color, Andersen could easily have protected itself with an early motion to dismiss"); Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH, 603 F.3d 943, 954 (Fed.Cir. 2010) ("A sanction is generally improper where a successful motion could have avoided any additional legal expenses by defendants").

---

[5]    *See also* Procter & Gamble Co. v. Kraft Foods Global, Inc., 549 F.3d 842, 848 (Fed. Cir. 2008) ("a requestor's burden to show that a reexamination order should issue from the PTO is unrelated to a defendant's burden to prove invalidity by clear and convincing evidence at trial").

[6]    "[A] party who has carried the burden of establishing an issue by a preponderance of the evidence is not entitled to assert preclusion in a later action that requires proof of the same issue by a higher standard." 18 Wright, Miller, *et. al*., Federal Practice & Procedure, §4422 (2d ed.).

While CSZ argues that Gaymar unreasonably opposed a stay of proceedings pending the conclusion of the PTO reexamination proceedings, CSZ's stay motion noted that the average duration of such a proceeding was 32.7 months ([21-5]). Given that prospect, Gaymar cannot be faulted for opposing the stay, since "a long stay of litigation, especially when requested after the suit's earliest stages, can seriously prejudice a plaintiff and place [it] at a serious tactical disadvantage." Baseball Quick, LLC v. MLB Advanced Media, L.P., 2013 WL 2257094, *2 (S.D.N.Y. 2013).

The fact that CSZ eventually defeated Gaymar's motion for a preliminary injunction does not  mean that Gaymar's claims were objectively unreasonable. "In resisting a preliminary injunction . . . one need not make out a case of actual invalidity. Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial. The showing of a substantial question as to invalidity thus requires less proof than the clear and convincing showing necessary to establish invalidity itself." Amazon.com, 239 F.3d at 1358-59.  *See also* Erico International Corp. v. Vutec Corp., 516 F.3d 1350, 1356 (Fed. Cir. 2008) ("Validity challenges during preliminary injunction proceedings can be successful, that is, they may raise substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial"); New England Braiding Co., Inc. v. A.W. Chesterton Co., 970 F.2d 878, 882-83 (Fed. Cir. 1992) ("At this preliminary stage, the trial court does not resolve the validity question but rather must . . . make an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial").

In fact, as previously stated, in denying the preliminary injunction and granting a stay of proceedings - *after* CSZ had raised all of its arguments regarding invalidity and

inequitable conduct - Judge Skretny recognized the possibility that Gaymar might yet prevail with the PTO. Decision and Order [91], p. 6 ("should Gaymar prevail at the PTO and the '510 patent be determined valid, Gaymar may, if otherwise able, recover lost profits and money damages from CSZ"). Moreover, in moving for a stay, CSZ itself acknowledged that the PTO's reexamination might not invalidate the patent: "because Gaymar can be adequately compensated by monetary damages, a stay will not prejudice its potential recovery of such damages". CSZ's Memorandum of Law [21-6], p. 11. Therefore, for CSZ to now suggest that the PTO's cancellation of all of the patent claims "was inevitable and entirely foreseeable" (CSZ's Memorandum of Law [159], p. 1) smacks of revisionist history.

CSZ further argues that "Gaymar . . . misled this Court as to its burden to address validity and enforceability at the preliminary injunction stage". CSZ's Memorandum of Law [159], p. 21. "[I]n its preliminary injunction motion Gaymar said nothing about validity . . . . At the initial hearing in July 2008, CSZ explained Gaymar's deficiency and cited <u>Nutrition 21</u> [<u>Nutrition 21 v. United States</u>, 930 F.2d 867 (Fed. Cir. 1991)]. This Court gave Gaymar an opportunity to supplement its preliminary injunction motion. But Gaymar ignored <u>Nutrition 21</u> and did nothing . . . . This issue involves candor to the Court, or more correctly stated, an utter lack of candor to the Court." <u>Id.</u>, p. 22.

If anyone has demonstrated a lack of candor on this point, it is CSZ, not Gaymar. It is well settled that "if a patentee moves for a preliminary injunction and the alleged infringer *does not challenge validity*, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." <u>Titan Tire Corp. v. Case New Holland, Inc.</u>, 566 F.3d 1372, 1377 (Fed. Cir. 2009) (emphasis

added).  At the time Gaymar filed its motion for a preliminary injunction, CSZ had not yet pled an

affirmative defense of invalidity, as required by 35 U.S.C. §282(b).  *See* Cornwall v.  U.S.

Construction Manufacturing, Inc., 800 F.2d 250, 252 (Fed. Cir. 1986) (holding that patent

invalidity is an affirmative defense).[7]  Until that defense was pled by CSZ, invalidity was not an

issue in the case.  "Failure to plead an affirmative defense in the answer results in . . . its

exclusion from the case."  Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir. 1984); Wood v.

Milyard, ___U.S. ___, 132 S.Ct. 1826, 1832 (2012).

Therefore, in moving for a preliminary injunction prior to CSZ's answer, Gaymar

was not "obliged to anticipate and refute [CSZ's] affirmative defense of obviousness".  Gaymar's

Reply Memorandum of Law [71], p. 2.  Instead, it was entitled to rely upon the presumption of

validity (35 U.S.C. §282(a)) in showing likelihood of success on the merits.  "[T]he burden is on

the challenger to come forward with evidence of invalidity, just as it would be at trial.  The

patentee, to avoid a conclusion that it is unable to show a likelihood of success, *then* has the

burden of responding with contrary evidence."  Titan Tire, 566 F.3d at 1377 (emphasis added).

That is completely consistent with the position that Gaymar took before Judge Skretny at the

initial conference on July 21, 2008 ([23], pp. 16-18).

None of the case authorities cited by CSZ require the patentee seeking a

preliminary injunction to address validity before the defendant has raised the defense of

invalidity.  *See* New England Braiding Co., 970 F.2d at 882 ("unless the alleged infringer

undertakes to challenge validity with evidence, the patentee need do nothing to establish its rights

---

[7]    Nor, for that matter, had it filed its reexamination request with the PTO detailing its
arguments for invalidity.

under the patent"); <u>Nutrition 21</u>, 930 F.2d at 869 ("In the proceedings below, Thorne raised substantive issues respecting the validity and enforceability of the '927 patent based on evidence of record"); <u>Amazon.com</u>, 239 F.3d at 1346-47 ("BN resisted the preliminary injunction on several grounds, including that . . . substantial questions exist as to the validity of Amazon's patent"); <u>Hutzler Mfg. Co., Inc. v. Bradshaw International Inc.</u>, 2012 WL 3031150, *2 (S.D.N.Y. 2012) ("If the alleged infringer . . . asserts an invalidity defense that the patentee cannot prove lacks substantial merit, the preliminary injunction should not issue").

CSZ further mischaracterizes the record by suggesting that "Gaymar . . . failed to address the Sarns 85 Manual, even after being prompted by the Court" (CSZ's Memorandum of Law [159], p. 28). Far from "prompting" Gaymar to address validity at the outset, Judge Skretny stated that it made sense for Gaymar to defer that discussion until its reply papers: "if what you're telling me is you're prepared to stand on what you submitted, and then Mr. Burger can brief your application and expand the issues, and then you get the opportunity to reply . . . . that would seem to me to make some kind of sense". Transcript of July 21, 2008 proceedings [23], p. 18.

In its reply papers, Gaymar addressed CSZ's invalidity arguments at great length and in considerable detail. *See*, *e.g.*, Gaymar's Reply Memorandum [71]; Dr. Mates' Reply Declaration [74]. "[A] party . . . alleging invalidity of a patent on the basis of obviousness must establish by clear and convincing evidence that the subject matter of the patent as a whole would have been obvious to one of ordinary skill in the art at the time of invention." <u>Zoltek Corp. v. United States</u>, 95 Fed. Cl. 681, 693 (Fed. Cl. 2010). Dr. Mates opined that "mechanical engineering is the relevant art for determining whether the invention is obvious. The '510 patent

relates directly to the disciplines of heat transfer, fluid dynamics,and systems control, which I consider to be branches of mechanical engineering". Mates Reply Declaration [74], ¶44. He explained why he considered himself to be skilled in that art (id., ¶¶45-46) and why the invention embodied by the '510 patent would not have been obvious to one skilled in the art (id., ¶¶47 *et seq.*).

"What is obvious is not a question upon which there is likely to be uniformity of thought in every given factual context." Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 18 (1966). Therefore, while Gaymar eventually decided not to continue its challenge to the PTO's determination that the claims asserted in this action were invalid for obviousness, CSZ has not proven by clear and convincing evidence that that Gaymar's claims were objectively baseless. *See* Aspex Eyewear Inc. v. Clariti Eyewear, Inc. 605 F.3d 1305, 1314-15 (Fed.Cir. 2010) ("Defeat of a litigation position, even on summary judgment, does not warrant an automatic finding that the suit was objectively baseless; all of the circumstances must be considered"); Textscape LLC v. Adobe Systems Inc., 2010 WL 2942026, *1 (N.D.Cal. 2010) ("While the Court ruled that the patent was invalid, the issue required substantial briefing and analysis such that the Court finds that the litigation was not objectively baseless").

## C.   Did Gaymar Maintain This Action in Subjective Bad Faith?

As previously stated, "[b]oth the objective and subjective prongs . . . must be established by clear and convincing evidence." iLOR, 631 F.3d at 1377. Since I conclude that CSZ has failed to prove that Gaymar's claims were objectively baseless, I need not decide whether Gaymar acted in subjective bad faith. *See* Highmark, Inc. v. Allcare Health Management

-17-

Systems, Inc., 687 F.3d 1300, 1315 (Fed. Cir. 2012) ("Because we conclude that Allcare's allegations of infringement . . . were not objectively baseless, we need not reach the question of whether Allcare acted in subjective bad faith").

Moreover, if (as CSZ contends) Gaymar knew that this action was predestined to fail in light of the Sarns Manual, then it would have been foolish for Gaymar to undertake the expense of this litigation. It seems far more reasonable to conclude that Gaymar believed in good faith that the '510 patent was not invalid. In any event, CSZ has not proven by clear and convincing evidence that the converse is true.


**D.      Did Gaymar Engage in Inequitable Conduct Before the PTO?**

"A case may be deemed exceptional under §285 where there has been . . . inequitable conduct in procuring the patent." MarcTec, 664 F.3d at 916. "Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence." Aspex,  605 F.3d at 1315.  "Mistake or negligence, even gross negligence, does not support a ruling of inequitable conduct."  Id. at 1316.  Furthermore, "[i]ntent and materiality are separate requirements . . . . [A] court must weigh the evidence of intent to deceive independent of its analysis of materiality." Therasense, 649 F.3d at 1290.

1.      **Has CSZ Proven Materiality by Clear and Convincing Evidence?**

"[T]he materiality required to establish inequitable conduct is but-for materiality . . . . [P]rior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." Therasense, 649 F.3d at 1291. "A piece of prior art is not material to patent prosecution when it is cumulative of information already before the examiner . . . . An applicant has no duty to disclose a reference to the PTO if it is cumulative of or less material than references already before the examiner." Rothman v. Target Corp., 556 F.3d 1310, 1326 (Fed. Cir.), cert. denied, 558 U.S. 1024 (2009).

In moving to strike the Killworth declarations, Gaymar notes that Killworth admitted that he had not read all of the prior art references cited in the '510 patent (Gaymar's Memorandum of Law [163-1], p. 6), and argues that his failure to do so "renders any opinion as to what other prior art should have been disclosed to the PTO incompetent, because materiality can only be judged by reference to the body of prior art before the PTO". Id., p. 7.

CSZ responds that "[t]he fact that Mr. Killworth did not read each cited patent in the prosecution history does not render his opinion regarding materiality incompetent. At most, it goes to the question of weight, rather than admissibility of his opinion". CSZ's Memorandum in Opposition [166], p. 21. Even if that were true, the fact that Killworth had not read all of the prior art cited in the '510 patent severely undercuts CSZ's attempt to prove materiality "by clear and convincing evidence". Aspex, 605 F.3d at 1315.

Of even greater significance is Killworth's admission that he is not skilled in the art of the '510 patent, and does not even know what the relevant art might be. *See* Gaymar's Memorandum of Law [163-1], pp. 4-5. "What a prior art reference discloses or teaches is

determined from the perspective of one of ordinary skill in the art." <u>Sundance, Inc. v. DeMonte Fabricating Ltd.</u> 550 F.3d 1356, 1361, n. 3 (Fed. Cir. 2008). Therefore, "a witness not qualified in the pertinent art may not testify as an expert as to . . . what a prior art reference discloses, or whether the asserted claims read on the prior art reference . . . . Nor may a witness not qualified in the pertinent art testify as an expert on obviousness, or any of the underlying technical questions, such as the nature of the claimed invention, the scope and content of prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention." <u>Id.</u> at 1363-64.

In attempting to distinguish this case from <u>Sundance</u>, CSZ argues that "Mr. Killworth's opinions are not based from the perspective of one of ordinary skill in the art". CSZ's Memorandum in Opposition [166], p. 17. In fact, that is *exactly* what Killworth attempts to do - opining, for example, that "it would have been obvious *to a person of ordinary skill* to minimize patient discomfort by operating the MT-II device in Manual mode to maintain the gradient". Killworth Supplemental Declaration [161], ¶25 (emphasis added).

CSZ further argues that "unlike the *Sundance* case, the technology at issue in the current matter is generally understandable and does not require an expert with technical skill in the art. CSZ has maintained this position from the outset". CSZ's Memorandum in Opposition [166], p. 17. No, it didn't - at the outset of this case, CSZ told Judge Skretny that "[w]e need to identify our own expert in the technology. And we would also like to have an expert witness on patent practice." Transcript of July 21, 2008 proceedings [23], p. 11.

Since CSZ has failed to convince me that technical expertise is *not* required in order to assess the significance of the prior art, Mr. Killworth - who admittedly lacks that

expertise - may not opine on the scope or materiality of the uncited prior art, or on any issue other than PTO procedure. *See* Sundance; Degelman Industries Ltd. v. Pro-Tech Welding and Fabrication, Inc., 2011 WL 6754051, *6 (W.D.N.Y.) (Berenato, Special Master), adopted, 2011 WL 6752565 (W.D.N.Y. 2011) (Telesca, J.) ("Godici fails to qualify as an expert in this technical field and thus, based upon the Federal Circuit's *Sundance* decision, it is recommended that he not testify on validity or inequitable conduct"); PacTool International, Ltd. v. Kett Tool Co., Inc., 2012 WL 13686, *2 (W.D.Wash. 2012) ("Killworth may testify regarding Patent Office practice and procedure . . . . The remainder of Killworth's proffered testimony, however, is clearly legal conclusions that persons violated the duty of disclosure. Therefore, the Court grants PacTool's motion as to all testimony except the practices and procedures of the Patent Office").

For these reasons, I conclude that CSZ has failed to prove the "but-for" materiality of the uncited prior art references by clear and convincing evidence.


**2.      Need the Court Consider "Intent to Deceive"?**

CSZ "seeks a determination from this Court whether it has already established a prima facie case of Gaymar's specific intent to deceive" the PTO, and "has requested a merits hearing for inequitable conduct . . . . If this Court agrees and grants CSZ's request, then CSZ seeks an opportunity to take . . . depositions prior to that hearing". Burger Reply Declaration [167-1], ¶¶2, 3.

However, as previously discussed, "intent to deceive" is only one of the elements necessary to prove inequitable conduct, the other being materiality - and since CSZ has failed to prove materiality by clear and convincing evidence, no point would be served in prolonging this

litigation by conducting a hearing on intent to deceive. *See* Aspex, 605 F.3d at 1316 ("Clariti argues that the district court clearly erred because it did not fully develop and find all the facts that might show that this case should be declared exceptional. However . . . in the absence of a prima facie case showing clear and convincing evidence of inequitable conduct, the court was not required to pursue the fee-shifting premises").[8]

## E.      Did Gaymar Engage in Litigation Misconduct?

"Litigation misconduct generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings." Highmark, 687 F.3d at 1315-16. CSZ cites several alleged examples of litigation misconduct by Gaymar, one of which I find persuasive: "Gaymar concealed the Sarns 85 Manual from CSZ during discovery, by giving CSZ incorrect discovery responses". CSZ's Memorandum of Law [159], p. 28.

In responding to CSZ's document request for "all documents that refer to . . . Sarns or the Sarns TCM or TCM II products", Gaymar asserted attorney-client and work product privilege, but went on to state that "documents relating to the Sarns TCM or TCM II products possessed by Gaymar were *either* provided to Gaymar by CSZ's counsel *or* attached to CSZ's request for *Inter Partes* Re-Examination of the '510 Patent". CSZ's Memorandum of Law [159], p. 13 (emphasis added).

CSZ argues that "Gaymar's assertion of privilege was spurious because the Sarns 85 Manual itself represents underlying factual information, and this Court has so held. This

_____

[8]         Moreover, for reasons discussed in section F of this opinion, CSZ's own conduct makes an award of fees inappropriate regardless of Gaymar's conduct.

response was also improper because the second sentence was false and was calculated to mislead CSZ into believing that Gaymar did not possess the Sarns 85 Manual prior to filing the lawsuit", whereas CSZ subsequently admitted that it was in possession of the Sarns Manual in early April 2008. Id., pp. 13-14.

Gaymar responds that it "believed, and still believes, that this privilege assertion was proper and asserted in good faith. It was not 'spurious' . . . . Materials gathered as part of a work product investigation, even if they may otherwise be non-privileged, can be protected from disclosure during discovery." Gaymar's Memorandum of Law [164], p. 30.  Although I rejected Gaymar's assertion of privilege [136], I agree that its assertion of privilege was not "spurious".

However, Gaymar did more than assert privilege - it went on to state that the Sarns documents "were *either* provided to Gaymar by CSZ's counsel *or* attached to CSZ's request for *Inter Partes* Re-Examination of the '510 Patent". CSZ's Memorandum of Law [159], p. 13 (emphasis added). The use of the phrase "either-or" connotes "an unavoidable choice between only two alternatives". Webster's Third New International Dictionary (Unabridged). Thus, Gaymar's response concealed the third alternative - namely, that it had independently obtained a copy of the Sarns Manual in early April 2008, prior to commencement of this litigation.

While this misrepresentation, which I believe was intentional, could be considered litigation misconduct sufficient to render this an "exceptional" case under §285,[9] such a

---

[9]        "A finding of exceptionality based on litigation misconduct, however, usually does not support a full award of attorneys' fees . . . . Instead, the fee award must bear some relation to the extent of the misconduct . . . and compensate a party for the *extra* legal effort to counteract the misconduct." Highmark, 687 F.3d at 1316 (emphasis in original); Rambus, 318 F.3d at 1106.

conclusion is not mandated.  *See* <u>Western Marine Electronics, Inc. v. Furuno Elec. Co., Ltd.</u>  764

F.2d 840, 847 (Fed. Cir. 1985) ("We discern no error in the trial court's determination of the

extent to which the present discovery misconduct merited sanctions and whether it rendered the

case exceptional for purposes of 35 U.S.C. §285"); <u>Textscape LLC v. Adobe Systems Inc.</u>, 2010

WL 2942026, *1 (N.D.Cal. 2010) ("Had plaintiff been found to have not made timely discovery,

a Rule 37 sanction, not a $400,000 fee award, might have been appropriate.  Even had the

claimed discovery . . . been provided earlier, the Court would still have had to resolve the

anticipation issue").

       Although Gaymar's misleading response concerning its possession of the Sarns

Manual is certainly not to be condoned, in the overall context of proceedings I do not believe it

renders the case "exceptional". Moreover, for the reasons discussed in the following section of

this opinion, I would not recommend an award of attorney's fees even if the case was

exceptional.


**F.      Is an Award of Attorney Fees or Expenses Warranted?**

       "[E]ven an exceptional case does not require in all circumstances the award of

attorney fees". <u>Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.</u>, 393 F.3d

1378, 1382 (Fed. Cir. 2005). "[T]he trial court has broad discretion in the criteria by which it

determines whether to award attorney fees . . . . All of the circumstances must be considered."

<u>Brooktree Corp. v. Advanced Micro Devices, Inc.</u>, 977 F.2d 1555, 1582 (Fed. Cir. 1992).

       "The trial judge is in the best position to weigh considerations such as the

closeness of the case, tactics of counsel, the conduct of the parties and any other factors that may

contribute to a fairer allocation of the burdens of litigation as between winner and loser." J.P. Stevens, 822 F.2d at 1051. These factors will therefore be analyzed:

### 1. Closeness of the Case

As stated previously, CSZ's failure to move for summary judgment suggests that this case was closer than CSZ would now have this court believe.

### 2. Tactics of Counsel/Conduct of the Parties

"Courts may . . . consider the litigation conduct of *both* sides in connection with evaluating and award[ing] attorney's fees under the statute." Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 372 F.Supp.2d 833, 851 (E.D.Va. 2005) (emphasis added). For example, in Power Mosfet Technologies, L.L.C. v. Siemens AG, 378 F.3d 1396, 1415 (Fed. Cir. 2004), the court denied attorney's fees under §285 "because *all* of the parties had conducted themselves without the decorum required when practicing before a federal court" (emphasis in original).  In Motorola, Inc. v. Interdigital Technology Corp., 121 F.3d 1461, 1468 (Fed. Cir.1997), although the court "concluded that ITC's conduct was poor", it "declined to award fees to Motorola because its conduct was nearly as bad". And in Wi-Lan Inc. v. LG Electronics, Inc., 2013 WL 2322483, *12 (S.D.N.Y. 2013) the court recommended that fees be denied where "both parties engaged in conduct that should not have occurred".

While Gaymar's conduct in this case is not blameless,[10] neither is that of CSZ. Litigation misconduct can consist of "misrepresentations to the court" or "shifting legal theories", E-Pass Technologies, Inc. v. 3Com Corp., 559 F.3d 1374, 1378, 1380 (Fed. Cir. 2009), and as previously discussed, CSZ is guilty of both - for example:

- - in telling Judge Skretny on July 21, 2008 that it needed to identify an expert in the technology ([23], p. 11), then later asserting that it had maintained "from the outset" that no technological expert was needed ([166], p. 17);

- - in having Mr. Killworth opine on prior art from the perspective of one skilled in the art ([161], ¶25), then later denying that he did so ([166], p. 17);

- - in claiming that "[a]t the hearing in July, Gaymar denied that it had any obligations regarding validity" ([85], p. 7), whereas in fact Gaymar correctly told Judge Skretny that its obligation to address validity would not arise until CSZ had alleged and introduced evidence of invalidity ([23], pp. 16-18);

- - in claiming that "this court gave Gaymar an opportunity to address its flawed position, with a chance to update its motion for a preliminary injunction . . . . Instead, Gaymar chose to ignore its obligations regarding validity" (id., p. 8; see also [46-2], p. 1; [86], p. 1; [159], p. 22), whereas in fact Judge Skretny agreed with Gaymar's proposal to defer discussion of validity until its reply papers, after CSZ had asserted the defense of invalidity ([23], p. 18).

The effect of CSZ's misrepresentations is only "exacerbated by repetition". E-Pass Technologies, 559 F.3d at 1379, 1380. Patent cases are complicated enough to begin with,

---

[10]     And for that reason, in part, I am denying Gaymar's request for attorney's fees in connection with its motion to strike the Killworth Declarations.

and "forcing the court to expend extra time and effort in carefully double-checking every reference to the record . . . threatens the integrity of the judicial process and increases the waste of resources." Romala Corp. v. United States, 927 F.2d 1219, 1224 (Fed. Cir. 1991).

Therefore, regardless of whether this case could be considered "exceptional", in view of CSZ's own misconduct I conclude that it is not "grossly unjust" for CSZ to bear the burden of its own counsel fees "which prevailing litigants normally bear". J.P. Stevens Co., 822 F.2d at 1052 (Fed. Cir. 1987).

Nor do I see a reason for this court to exercise its inherent authority to award expert witness fees, as requested by CSZ (see CSZ's Memorandum of Law [159], p. 50). While "[a] district court has inherent authority to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute", MarcTec, 664 F.3d at 921, this authority "is reserved for cases where the district court makes a finding of fraud or bad faith whereby the very temple of justice has been defiled". Id. Here, the evidence does not justify such a finding.[11]


## CONCLUSION

For these reasons, Gaymar's motion [163] is granted to the extent it seeks to strike the Mr. Killworth's commentary on the scope and content of prior art, "but-for" materiality, and whether Gaymar breached the duty of candor to the PTO, but is otherwise denied, and I recommend that CSZ's motion for attorney's fees [158] be denied.

---

[11]     Moreover, reimbursement of Mr. Killworth's fees would not be appropriate in any event, since much of his proposed testimony is being stricken.

Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by August 26, 2013 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: August 8, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge