UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GAYMAR INDUSTRIES, INC.,

                     Plaintiff,

v.

CINCINNATI SUB-ZERO PRODUCTS, INC.,
and INNERCOOL therapies, Inc.,

                     Defendants.
_____

**REPORT AND RECOMMENDATION**

08-CV-00299-WMS-JJM

        Plaintiff Gaymar Industries, Inc. ("Gaymar") commenced this action on April 18, 2008, alleging infringement of U.S. Patent No. 6,517,510 (the "'510 patent"). Complaint [1].[1] The action has been referred to me by Hon. William M. Skretny for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [145]. Before me is the Renewed Motion for Attorney Fees [226] by defendant Cincinnati Sub-Zero Products, Inc. ("CSZ") pursuant to 35 U.S.C. §285, in light of the Federal Circuit's partial reversal and remand of this court's decision denying its prior motion for such relief. *See* Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc., 790 F.3d 1369 (Fed. Cir. 2015). Oral argument was held on November 12, 2015 [229].

        On June 14, 2016 CSZ moved for leave to submit additional authority (Inventor Holdings, LLC v. Bed Bath & Beyond Inc., 2016 WL 3090633 (D. Del. 2016)) [230]. By Text Order dated June 16, 2016 [231], I granted that motion, and also invited the parties to address the potential impact of that day's Supreme Court decision in Kirtsaeng v. John Wiley & Sons, Inc., ___U.S.___, 136 S.Ct. 1979 (2016). Having considered the entire record, including the parties'

---

[1] Bracketed references are to the CM/ECF docket entries.

supplemental submissions [230, 234-236], for the following reasons I recommend that Gaymar's Renewed Motion [226] be denied.

## BACKGROUND

I assume the reader's familiarity with: 1) my August 8, 2013 Report, Recommendation and Order [171], subsequently adopted by Judge Skretny [183], discussing in detail the history of this case and my reasons for recommending denial of CSZ's original motion for attorney's fees [158]; 2) my July 3, 2014 Report and Recommendation [209], subsequently adopted by Judge Skretny [217], recommending denial of Gaymar's motion for reconsideration [186]; and 3) the Federal Circuit's opinion in Gaymar, which gives rise to the Renewed Motion.

## ANALYSIS

35 U.S.C. §285 states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party". "This text is patently clear. It imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." Octane Fitness, LLC v. ICON Health & Fitness, Inc., ___U.S.___, 134 S. Ct. 1749, 1755–56 (2014). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. at 1756.

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances. As in the comparable context of the Copyright Act, there is no precise rule or formula for making these determinations,

but instead equitable discretion should be exercised in light of the considerations we have identified . . . including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id., n. 6.

In reversing the denial of CSZ's prior motion for attorney's fees, the Federal Circuit reasoned that although CSZ "failed to establish that the district court abused its discretion" in concluding that Gaymar's litigation positon was not objectively baseless (Gaymar, 790 F.3d at 1372–73), this court erred by relying upon CSZ's alleged litigation misconduct as a basis for denying the motion. "[T]he district court chose not to rest its decision on the reasonableness of Gaymar's litigation position - *a step it might have taken* - but instead refused to award fees under Octane based in significant part on its finding that '[g]iven CSZ's own litigation misconduct, it does not have clean hands sufficient to render this an 'exceptional case' . . . . To be sure, the conduct of the parties is a relevant factor under Octane's totality-of-the-circumstances inquiry, including the conduct of the movant, but we conclude that the district court committed clear error here in finding misconduct by CSZ." Id. at 1373 (emphasis added).

Although recognizing that "[w]ithout question, CSZ's arguments . . . could be properly characterized as overstatements", the Federal Circuit concluded that they "amount to sloppy argument, at worst. While such sloppiness on the part of litigants is unfortunately all too common, it does not amount to misrepresentation or misconduct . . . . Because none of the examples cited by the district court constitutes litigation misconduct, a remand is required." Id. at 1376, 1377. However, the court noted that "[o]n remand, the district court remains free to deny attorney's fees based on the totality of the circumstances, including the strength of Gaymar's litigation position and the sustained finding that Gaymar's litigation position was not objectively baseless". Id. at 1377.

Accordingly, I will consider CSZ's Renewed Motion in light of the "totality of the circumstances" - bearing in mind, however, that it "is not to be used as a means for a party to litigate the substantive merits of the case", Polarity, Inc. v. Diversified Technologies, Inc., 2006 WL 3456634, *2 (N.D. Cal. 2006), and "should not result in a second major litigation". Kirtsaeng, 136 S. Ct. at 1988; Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).

**Frivolousness/Objective Unreasonableness**

"[F]or a case dismissed before trial to be designated exceptional, evidence of the frivolity of the claims must be reasonably clear without requiring a 'mini-trial' on the merits for attorneys' fees purposes." Trover Group., Inc. v. Dedicated Micros USA, 2015 WL 4910875, *3 (E.D. Tex. 2015) (Bryson, J.).[2] "[T]he sustained finding that Gaymar's litigation position was not objectively baseless" (Gaymar, 790 F.3d at 1377) is the law of the case, applying not merely (as CSZ appears to argue) to its position at the outset of the litigation, but throughout.

**Subjective Bad Faith**

"A case presenting *either* subjective bad faith *or* exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." Octane, 134 S. Ct. at 1757 (emphasis added). CSZ's Renewed Motion "focuses on the 'subjective inquiry' of the exceptional case determination", arguing that "this Court must address the unreasonableness of Gaymar's refusal to withdraw its preliminary injunction motion as this case progressed through the latter part of 2008", when "the undisputed facts and the law mounted up against Gaymar's position". CSZ's Memorandum of Law [226-1], pp. 1, 2.

---

[2]   Judge Bryson sat on the Federal Circuit panel which decided Gaymar.

CSZ suggests that Gaymar "escalated the stakes at the outset based on a contrived sense of urgency". Id., p. 2. I disagree. Although Gaymar filed its motion for preliminary injunction on July, 15, 2008 [3], Judge Skretny gave CSZ until October 6, 2008 to respond [9], and oral argument was not held until November 17, 2008 [90]. It was not until September 10, 2008 - three months from the filing of Gaymar's injunction motion, and two months after CSZ filed its request for reexamination by the PTO - that CSZ moved to stay the action [21]. CSZ did not request an expedited hearing on that motion. Moreover, during that time frame CSZ conducted discovery which it used in the PTO proceedings. Gaymar's Memorandum of Law [227], p. 3. Therefore, I perceive no sense of "urgency" – contrived or otherwise.

CSZ further argues that "the subjective prong may suggest that a case initially brought in good faith may be continued in bad faith depending on developments during discovery and otherwise". Id., p. 2 (*citing* Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1379 (Fed. Cir. 2008)). For example, in Inventor Holdings, LLC v. Bed Bath & Beyond Inc., *2 (D. Del. 2016) (discussed in CSZ's motion to submit supplemental authority [230]), the court held that although the infringement action may have been commenced in good faith, it was not continued in good faith in light of a subsequent change in controlling case law: "whatever merit IH's claims had at the outset of litigation, by the time of the Alice decision, the business method claims in the '582 Patent were objectively ineligible" for patent protection. Id., *3.[3] The court concluded that "regardless of whether IH initially felt that it had a plausible claim, IH had an obligation to reevaluate its case in light of subsequent decisions . . . . The case at hand is an exceptional case because following the Alice decision, IH's claims were objectively without merit. These facts alone . . . support a finding that the case 'stands out from others' and is exceptional under §285." Id.

---

[3]    The "Alice decision" refers to Alice Corp. v. CLS Bank International, ___U.S.___, 134 S.Ct. 2347.

Significantly, in <u>Inventor Holdings</u> the patentee did not voluntarily dismiss the case, but forced the defendant to move to dismiss, which motion the court granted. Here, by contrast, it was by no means clear by the end 2008 that the PTO's granting of the motion for reexamination would necessarily lead to the denial of Gaymar's motion for preliminary injunctions. Although on October 24, 2008, the PTO granted CSZ's request for reexamination of all 134 claims of the '510 Patent and initially rejected those claims, it invited Gaymar to file a response within two months of that date, demonstrating why the claims should not be finally rejected [67-2]. During oral argument before Judge Skretny on November 17, 2008 [90], the parties discussed the possible impact of the PTO's initial rejection of the patent claims on the litigation. CSZ's attorney admitted that the PTO's initial action was "routine" (<u>id.</u>, p. 6), and Gaymar's attorney stated that "well over 90 percent of reexamination requests are granted" (<u>id.</u>, p. 8). While CSZ argued that "the patent office's rejection of all 134 claims is fatal to a preliminary injunction", Judge Skretny replied that "I've looked at it to some extent, and . . . the cases go both ways" (<u>id.</u>, p. 11). At that time he took Gaymar's motion for a preliminary injunction and CSZ's motion for a stay of proceedings under advisement.

On December 22, 2008, Gaymar filed its response to the PTO's initial rejection of the patent claims [160-10]. While agreeing to the cancellation of certain claims, Gaymar argued at length that the remaining claims were not obvious in light of the prior art. <u>Id.</u>, pp. 12, *et. seq*.

On September 28, 2009, Judge Skretny denied Gaymar's motion for a preliminary injunction and granted CSZ's motion for a stay of proceedings, reasoning that the PTO's "nonfinal action rejecting all 134 claims in the '510 patent" raises "a substantial issue of patent validity". Decision and Order [91], p. 3. However, he recognized the possibility that Gaymar might yet prevail: "should Gaymar prevail at the PTO and the '510 patent be determined valid, Gaymar may,

if otherwise able, recover lost profits and money damages from CSZ." Id., p. 6.  He ordered the action "stayed pending a final resolution of the PTO's reexamination of the '510 patent". Id., p. 8.

On November 23, 2009, the PTO reaffirmed its cancellation of all the claims of the '510 patent and issued a notice of right to appeal that cancellation [164-24].  Although Gaymar filed a notice of appeal, on March 18, 2010 it sent CSZ a proposed stipulation discontinuing this action on the merits, "with each party to bear its own costs and fees" [98-18].  CSZ responded that same day, stating that it intended "to pursue its counterclaims against Gaymar, to have the lawsuit declared exceptional under 35 U.S.C. §285, and to recover its attorneys' fees related to the lawsuit and reexamination" [98-19].  Nevertheless, on April 16, 2010, Gaymar notified the PTO that it was abandoning the re-examination, and that it consented to cancellation of all claims of the '510 patent. [98-17].  On July 13, 2010, the PTO formally cancelled those claims. [92-2], p. 5.

Unlike the patentee in Inventor Holdings, Gaymar did not force CSZ to move to dismiss the case – instead, it decided not to continue its appeal at the PTO, and consented to the cancellation of the patent claims. Although Gaymar's litigation position did not prevail, I find no indication that it acted in subjective bad faith.

**Motivation**

In its original motion for attorney's fees, CSZ argued that "Gaymar made an 'all-in' bet that CSZ would either give up, i.e., 'fold its hand,' or that this Court could be persuaded into making a rash decision, and ordering a preliminary injunction. Gaymar wanted a shortened race, with high stakes, in that it sought to eliminate its competitor from the market". CSZ's Memorandum of Law [159], p. 48.  If that were true, then one would assume that Gaymar would have given up once it realized that a quick favorable resolution was not in the cards, so as to avoid

"throwing good money after bad". It did not do so.  As I stated in my August 8, 2013 Report, Recommendation and Order, "if (as CSZ contends) Gaymar knew that this action was predestined to fail in light of the Sarns Manual, then it would have been foolish for Gaymar to undertake the expense of this litigation.  It seems far more reasonable to conclude that Gaymar believed in good faith that the '510 patent was not invalid". [171], p. 18.

**Inequitable Conduct**

CSZ admits that its original "Answer did not assert inequitable conduct".  CSZ's Memorandum of Law [97], p. 3.  On November 13, 2008 CSZ moved to amend its Answer to allege inequitable conduct [72], but stated that "should the Court grant CSZ's Motion to Stay, the adjudication of the present motion could be postponed pending the outcome of the ongoing re-examination" of the '510 patent at the PTO. CSZ's Memorandum of Law [72], p.1, n.1.

It was not until October 2010, *after* the patent claims had been finally invalidated, that CSZ sought to reinstate its previous motion to amend its answer to allege inequitable conduct [96, 97].  Where "a judgment of inequitable conduct has already been made by a court of competent jurisdiction . . . . such a judgment must be considered in ascertaining whether a case is exceptional under 35 U.S.C. §285", Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc., 182 F.3d 1356, 1360 (Fed. Cir. 1999).  Here, however, no such judgment had been made prior to the claims' cancellation, because CSZ sought and obtained a stay of litigation. "Where the issue of inequitable conduct, raised in the motion for fees, was not adjudicated at trial due to the moving party's trial strategy . . . the district court [is] justified in not requiring a full trial on the issue of inequitable conduct as part of the attorney fee motion." Euclid Chemical Co. v. Vector Corrosion Technologies, Inc., 2008 WL 4404540, *5 (N.D. Ohio 2008).

CSZ suggests that discovery is warranted with respect to its inequitable conduct claim. CSZ's Memorandum of Law [226-1], p. 24. Although Judge Skretny had previously granted CSZ's motion for targeted discovery (January 20, 20123 Decision and Order [119], pp. 13-15), during a status conference before me on August 20, 2012 [155], the parties agreed to brief the §285 motion without further discovery, while reserving their right to seek discovery before the motion was decided, if they could demonstrate that their presentation was incomplete because they needed additional information. Id., pp.30-33; *see also* my September 5, 2012 Text Order [154]. No such demonstration was offered at that time.

In any event, I have already addressed the charge of inequitable conduct issue (*see* August 8, 2013 Report, Recommendation and Order, pp. 18 *et seq.*) and see no need to revisit that issue.

**Conduct of the Litigation**

CSZ suggests that "[t]he subjective inquiry into the unreasonable manner in which Gaymar litigated this case remains relevant under Octane". CSZ's Memorandum of Law [226-1], p. 21. True enough, but that inquiry cuts both ways: "the conduct of the parties is a relevant factor under Octane's totality-of-the-circumstances inquiry, including the conduct of the movant." Gaymar, 790 F.3d at 1373. "Courts may also consider the litigation conduct of both sides in connection with evaluating and awarded attorney's fees under the statute." Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 372 F. Supp. 2d 833, 851 (E.D. Va. 2005).

CSZ asserts that I "concluded that Gaymar committed litigation misconduct when it 'concealed the Sarns 85 manual from CSZ during discovery, by giving CSZ incorrect discovery responses'". CSZ's Memorandum of Law [226-1], p. 19 (*quoting* my August 8, 2013 Report,

Recommendation and Order [171], p. 22). Given that the Federal Circuit has already noted CSZ's penchant for "overstatements",[4] I am surprised to see yet another overstatement in CSZ's Renewed Motion: I did not "conclude" that Gaymar committed litigation misconduct - what I said was that "[w]hile [Gaymar's] misrepresentation, which I believe was intentional, *could be* considered litigation misconduct . . . *such a conclusion is not mandated* . . . . Although Gaymar's misleading response concerning its possession of the Sarns Manual is certainly not to be condoned, in the overall context of proceedings I do not believe it renders the case 'exceptional'". August 8, 2013 Report, Recommendation and Order [171], pp. 22-23 (emphasis added). I see no reason to revisit that determination.

In any event, the record reflects that CSZ referred to the Sarns manual in its initial written response to Gaymar's motion for a preliminary injunction dated October 14, 2008, and even attached it as an exhibit [41-8]. Further, as noted above, the Sarns manual was thoroughly discussed by the parties during the proceedings before the PTO [160-10, 164-24]. Gaymar's delay in acknowledging its independent receipt of the Sarns manual, while not to be condoned, had no material impact on the substance of this litigation or the PTO reexamination so as to make this case "exceptional" for purposes of §285.

CSZ also criticizes Gaymar for "opposing subsequent efforts by CSZ to amend its pleading . . . . In addition, after the USPTO had cancelled the '510 patent, in 2010 Gaymar refused CSZ's request that it stipulate to CSZ's being the prevailing party for Section 285 purposes". CSZ's Memorandum of Law [226-1], p. 14. However, I can certainly understand Gaymar's reason for opposing those requests. In moving for a stay pending reexamination of the patent claims by the PTO, CSZ had argued that "[a] stay may enable the Court and the parties to avoid the prospect of

---

[4] "Without question, CSZ's arguments . . . could be properly characterized as overstatements." Gaymar, 790 F.3d at 1376.

protracted, expensive patent litigation *entirely* . . . . Should the Patent Office invalidate the asserted claims, *this action would be moot*." CSZ's Memorandum of Law [21-5], p. 10 (emphasis added). CSZ argued that a "distinct advantage to staying litigation pending a PTO proceeding" was that "[i]n those cases resulting in effective invalidity of the patent, the suit will likely be dismissed". Id., pp. 6-7 (*quoting* Perricone v. Unimed Nutritional Services, Inc., 2002 WL 31075868, *3 (D. Conn. 2002)). In granting the stay, Judge Skretny quoted that same language from Perricone: "This Court (and this case) will benefit from the many advantages that deferring to the PTO offers, including . . . [i]n those cases resulting in effective invalidity of the patent, the suit will likely be dismissed". September 28, 2009 Decision and Order [91], pp. 6-7.

It is hardly surprising, then, that Gaymar would oppose CSZ's post-claim dismissal attempt to continue the litigation for purposes of obtaining attorney's fees: "CSZ argued that the re-examination and invalidation of the claims of the '510 patent would render this action moot . . . . CSZ prevailed on its motion to stay, and this Court adopted CSZ's mootness and related arguments in granting its motion to stay. But the arguments made by CSZ now directly contradict the position CSZ previously took, and on which it prevailed. Because its contrary positions cannot be reconciled, CSZ is estopped from advancing the position that it is entitled to resuscitate this action . . . . Judicial estoppel 'prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' New Hampshire v. Maine, 532 U.S. 742, 749 (2001)." Gaymar's Memorandum of Law [101-5], pp. 12-13.

Had that argument been made to me, I would have agreed. However, Judge Skretny (who trumps me, in case the reader was unaware) did not. He reasoned that "most of CSZ's representations that the case would be moot reflect a *possible* benefit of a stay and could be

interpreted to relate to the substantive litigation concerning the patent infringement claim, not an attorney fees claim. Accordingly, although its positions do not neatly align with one another, they also do not directly contradict each other." January 20, 20123 Decision and Order [119], p. 12 (emphasis in original). Nevertheless, the fact that Gaymar's argument did not prevail does not mean that it was unreasonable.

"The trial judge is in the best position to weigh considerations such as the closeness of the case, tactics of counsel, the conduct of the parties and any other factors that may contribute to a fairer allocation of the burdens of litigation as between winner and loser. J.P. Stevens Co. v. Lex Tex Ltd., Inc., 822 F.2d 1047, 1051 (Fed. Cir. 1987). In this case, I conclude that "the litigation was hard-fought and both parties engaged in conduct that should not have occurred." Wi-Lan Inc. v. LG Electronics U.S.A., Inc., 2013 WL 2322483, *12 (S.D.N.Y. 2013). "No doubt, as with many large patent cases, litigation as a whole was hard fought, but this [court] sees no glaring justification that would support a finding of an exceptional case." Therasense, Inc. v. Becton, Dickinson & Co., 2008 WL 4680322, *2 (N.D. Cal. 2008).

**Considerations of Compensation and Deterrence**

CSZ argues that "the most pertinent equitable factor here relates to 'principles of compensation and deterrence'. This factor weighs heavily in CSZ's favor because the public interest was served by CSZ's efforts in invalidating the '510 Patent, and compensating CSZ would help to deter other overreaching patentees from filing lawsuits based on exceptionally weak patents." CSZ's Reply Memorandum of Law [228], p. 10. However, a case is not "exceptional" for purposes of §285 merely because the patent was found to be invalid. See CreAgri, Inc. v. Pinnaclife, Inc., 2014 WL 2508386 (N.D. Cal. 2014); EON Corp. IP Holdings, LLC v. FLO TV

Inc., 2014 WL 2196418 (D. Del. 2014). Even if I were to assume for sake of argument that "deterrence" is appropriate in this case (and I do not), in my view the time and expense incurred by Gaymar in opposing CSZ's claim for attorney's fees over the past several years should more than adequately perform that function.

"[W]e have stressed that §285 is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be *grossly unjust* to require it to bear its own costs." Kilopass Technology, Inc. v. Sidense Corp., 738 F.3d 1302, 1313 (Fed. Cir. 2013) (emphasis added). Having considered the totality of the circumstances in this case, I do not find it "grossly unjust" for CSZ be required to bear its own costs.

## CONCLUSION

"§285 commits the determination whether a case is 'exceptional' to the discretion of the district court." Highmark Inc. v. Allcare Health Management System, Inc., ___U.S.___, 134 S. Ct. 1744, 1748 (2014). "[A]s a matter of the sound administration of justice, the district court is better positioned to decide whether a case is exceptional . . . because it lives with the case over a prolonged period of time." Id. Having commenced this action in April 2008, Gaymar consented to the cancellation of the patent claims in April 2010 - over six years ago. A claim for attorney's fees should not become "the tail that wags the dog",[5] and in my view this tail has wagged long enough.

Therefore, for the reasons discussed, I recommend that this court exercise its discretion to deny CSZ's Renewed Motion [226] and dismiss this action, with prejudice. Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be

---

[5] Stretchline Intellectual Properties LTD. v. H&M Hennes & Mauritz LP, 2015 WL 5175196, *10 (E.D. Va. 2015); Euclid Chemical, 2008 WL 4404540, *5.

filed with the clerk of this court by September 6, 2016 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: August 19, 2016

                                              /s/ Jeremiah J. McCarthy
                                              JEREMIAH J. MCCARTHY
                                              United States Magistrate Judge